UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT ALLEN BAKER, #182416,     )
          )
         Plaintiff,     )     Case No. 1:09-cv-1059
          )
v.     )     Honorable Robert Holmes Bell
          )
COUNTY OF MISSAUKEE, et al.,     )     **REPORT AND RECOMMENDATION**
          )
         Defendants.     )
_____ )

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. §1983.

Plaintiff is currently an inmate in the custody of the Michigan Department of Corrections (MDOC)

The events giving rise to this lawsuit allegedly occurred at the Missaukee County jail, first while

plaintiff was being held as a pretrial detainee and later as a convicted felon awaiting sentencing.

Plaintiff named Missaukee County and eleven of its employees as defendants: Sheriff James

Bosscher, Lieutenant Andrea Martin, Dispatch Sergeant David Deruiter, and Corrections Officers

Erik Wein, Carole Yonkman, Eric Wickstrom, Darcy Hibblen, Stefanie Mills, Kenneth Bigger, Julie

Anderson, and Jason Behl. These defendants are referred to collectively as the Missaukee County

defendants. Sotero Ureta, M.D. and Lake City are also named as defendants.

Plaintiff alleges that he was "interrogated in the Sheriff's Offices by [a] County

Deputy temporarily assigned to the Traverse Narcotic Team (TNT) after deliberate withholding of

his medication in violation of his Sixth Amendment Right to Counsel." (¶ 21). He alleges that being

housed in various sections of the jail violated his rights under the Fourteenth Amendment's Due

Process Clause.  He also alleges that other deficiencies in his medical and dental care constituted deliberate indifference to serious medical needs in violation of his rights under the Fourteenth Amendment's Due Process Clause and the Eighth Amendment.  Plaintiff seeks an award of damages.

The matter is now before the court on three motions to dismiss.  Lake City argues that plaintiff's amended complaint fails to state a claim for municipal liability against it under section 1983.  (Motion, docket # 36).  The Missaukee County defendants seek dismissal of all plaintiff's claims under Rule 12(b)(6) based on the affirmative defense that plaintiff did not exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) before filing this lawsuit.  (Motion, docket # 41).  Dr. Ureta seeks dismissal of all plaintiff's claims for failure to state a claim, and alternatively, based on the affirmative defense of plaintiff's failure to exhaust his available administrative remedies before filing this lawsuit.  (Motion, docket # 22).

For the reasons set forth herein, I recommend that the court dismiss all plaintiff's claims seeking to undermine his criminal conviction and sentence, because such claims are barred until such time as plaintiff has had his convictions and sentences overturned.  I further recommend that the Rule 12(b)(6) motion by defendant Lake City (docket # 36) be granted and that all plaintiff's claims against this defendant be dismissed with prejudice.  I further recommend that the motion to dismiss by the Missaukee County defendants (docket # 41) be denied, because they have not carried their burden of proving their affirmative defense.  I recommend that defendant Ureta's motion seeking dismissal of plaintiff's complaint for failure to state a claim and on the affirmative defense of lack of exhaustion be denied.

## Applicable Standards

1.    Rule 12(b)(6) Standard

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and FED. R. CIV. P. 8(a)(2)).  While this notice pleading standard does require not require "detailed" factual allegations, it does require more than the bare assertion of legal conclusions.[1]  *See Twombly*, 550 U.S. at 555; *Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006).

Generally, when considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor.  *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 522 F.3d 430, 434 (6th Cir. 2008). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and

---

[1]The court can consider the exhibits that plaintiff attached to his amended complaint (docket #s 29-2 to 29-5, ID #s 358-429) without converting defendants' motions into motions for summary judgment.  FED. R. CIV. P. 10(c); *see Koubriti v. Convertino*, 593 F.3d 459, 462 n. 1 (6th Cir. 2010) ("Documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss.").

the formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Courts are not required to conjure up unpleaded allegations, nor accept unwarranted factual inferences. *See Total Benefits Planning*, 522 F.3d at 434; *J & R Marketing, SEP v. General Motors Corp.*, 549 F.3d 384, 389 (6th Cir. 2008). "To survive a motion to dismiss, [plaintiff] must allege enough facts to state a claim to relief that is plausible on its face . . . ." *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010)(quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even the lenient treatment generally given *pro se* pleadings has its limits. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

2.    Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

The Missaukee County defendants and Dr. Ureta have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A detainee or prisoner bringing an action with respect to jail or prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). He must exhaust available administrative remedies, even if he may not be able to obtain the specific type of relief he

seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. In

*Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are

not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216.

The burden is on defendants to show that plaintiff failed to properly exhaust his administrative

remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S.

at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted

claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss

the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

## Plaintiff's Allegations

Plaintiff is presently an inmate in the custody of the Michigan Department of

Corrections (MDOC). On November 26, 2007, plaintiff was arrested and began his confinement

at Missaukee County jail (MCJ). (docket # 29, Am. Compl. ¶ 22). He was a pretrial detainee at

MCJ from November 26, 2007, through September 4, 2008, and a convicted prisoner awaiting

sentencing from September 5, 2008, through October 7, 2008. (*Id.* at ¶ 21). He filed this lawsuit

on November 19, 2009. On February 23, 2010, the Michigan Court of Appeals upheld his

convictions and sentence.[2]

_____

[2]A Missaukee County jury found plaintiff guilty of delivery of less than 50 grams of heroin, MICH. COMP. LAWS § 333.7401(2)(a)(iv); possession of less than 25 grams of heroin, MICH. COMP. LAWS § 333.7403(2)(a)(v); possession with intent to deliver marijuana, MICH. COMP. LAWS § 333.7401(2)(d); maintaining a drug house, MICH. COMP. LAWS § 333.7405(1)(d); felon in possession of a firearm, MICH. COMP. LAWS § 750 .224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. On October 6, 2008, plaintiff was sentenced as a fourth habitual offender to 5-to-25 years in prison for delivery of heroin, 3 years and 10 months-to-15 years in prison for possession of heroin, 4-to-15 years in prison for possession with intent to deliver marijuana, 10 months-to-15 years in prison for maintaining a drug house, 3-to-25 years in prison for felon-in-possession, and 2 years in prison for felony-firearm. *See People v. Baker*, No. 289056,

### 1. Lake City

Plaintiff alleges that the jail is located in Lake City and that the city contracts with Missaukee County to have police and jail services provided to it. He states that Lake City has "joint decision making authority concerning the training of officers and policies and operations implemented at MCJ ." (*Id.* at ¶¶ 7, 8, ID # 308).

### 2. Plaintiff's November 30, 2007 Statement to the Police

Plaintiff alleges that before he began his confinement at MCJ, an unidentified doctor provided him with a prescription for methadone and that he was "physically and medically dependent on this drug." (¶ 22, ID # 311). He alleges that while incarcerated he began experiencing withdrawal symptoms, but he attributes his discomfort to the absence of methadone rather than illegal drugs. (¶¶ 22, 39, ID # 316). Plaintiff claims that he was sick when he was questioned by police on November 30, 2007, but was unsuccessful in his subsequent attempts to have his statement suppressed in the criminal case. (docket # 29-2, ID #s 359-68).

Plaintiff states that when he was being booked on November 26, 2007, he told Sergeant David DeRuiter that he was methadone dependent. (Am. Compl., ¶ 22). He alleges that his family gave his "pain medication" to Lieutenant Andrea Martin on November 27, 2007, but that she "failed or refused to have it filled." (*Id.*, ¶ 23). He states that on November 28, 2007, he told Corrections Officers Mills and Wickstrom that he was experiencing back pain and was feeling ill from lack of medication. (*Id.*, ¶ 24). Defendant Martin allegedly refused to allow plaintiff to have narcotics. (*Id.*, ¶ 25). He alleges that Lieutenant Martin informed him that the jail was a "non-

---

2010 WL 624305 (Mich. Ct. App. Feb. 23, 2010).

-6-

narcotic facility." (*Id.*, ¶ 25). On November 29, 2009, he made repeated requests to Corrections

Officers Mills, Wickstrom, and Lieutenant Martin that he be taken to a doctor. (*Id.*, ¶ 26). Plaintiff

asserts that he was in a "surreal state" when he made his incriminating statement to the police:

> By Friday morning, 11/30/07, the Plaintiff was vomiting uncontrollably, was having
> uncontrollable bowel movements, and was otherwise violently ill, and in extreme pain. The
> Plaintiff was in a "surreal state." At approximately 12:30 p.m. he was removed from his cell,
> handcuffed, and put into custody of the Deputy/TNT Detective in the case. The Plaintiff had
> been arraigned on 11/27/07 and was appointed counsel. Yet, the plaintiff was taken out of
> the jail, taken to a conference room in the Sheriff's Offices and interrogated for nearly an
> hour. At a later hearing the Deputy testified that he had done this at least several times
> before and did not know it was wrong to interrogate a prisoner once he had been appointed
> counsel, without counsel being present. The Circuit Court held that a Sixth Amendment
> violation did occur. *See* Exhibit 1.[3]

(*Id.*, ¶ 27). On November 30, 2007, plaintiff complained of chest pains and asked to be taken to the

hospital. "E.M.S." was contacted. After examining plaintiff, the emergency medical technicians

determined that plaintiff's medical condition did not warrant transporting plaintiff to the hospital.

(*Id.*, ¶ 28). Plaintiff states that he made requests to Sergeant DeRuiter in November, December and

January to be transported to see Dr. Ureta. (*Id.*, ¶ 48).

### 3.    Dental Care

On December 17, 2007, he filed a request for dental care. He stated that he had an

abscess, needed his partial denture fixed, and found it necessary to swallow his food in chunks. (*Id.*,

¶ 37, ID # 315; docket 29-3, ID # 375). On January 25, 2008, plaintiff was taken to a dentist, who

---

[3]Plaintiff's Exhibit 1 (docket # 29-2, ID#s 359-68) is an exceedingly selective portion of a
transcript for a hearing held on June 19, 2008, in Missaukee County Circuit Court on his motions
to dismiss the charges against him and to suppress his incriminating statement.

prescribed antibiotics. On a second visit two weeks later, the dentist extracted plaintiff's tooth. (Am. Compl., ¶¶ 44-46).

### 4. January 20, 2008 Letter to Sheriff Bosscher

On January 20, 2008, plaintiff wrote a lengthy letter addressed to Sheriff Bosscher (docket # 29-4 at ID #s 388-97). He asserted that there was a vast conspiracy to coerce him into pleading guilty to crimes that he did not commit. The letter contains this paragraph mentioning the jail's grievance process:

> 12. Lt. Martin will not allow the grievance process to function the way it is designed to. Ms. Martin answers all grievances, even the ones written on her. My understanding is that steps 2 and 3 go to the under-sheriff & sheriff, respectively. This does not happen. Your jail employees do not allow any grievances to go past Lt. Martin. I have tried to submit a step 2 and the c/o's all refused to take it once they see Ms. Martin's signature on it. I have been told that Ms. Martin is the beginning and end of the grievance process.

(*Id.* at ID # 394).

### 5. April 2008 Hearing on Plaintiff's Third Attorney's Motion to Withdraw

Plaintiff alleges that he had retained counsel in his criminal case and that this attorney "improperly filed a 'special appearance' in Plaintiff's case alleging that Plaintiff had paid him several thousand dollars, then decided to proceed Pro-per and had instructed the attorney to be his 'back-up.' This was entirely inaccurate and the Plaintiff promptly sent a letter to the court complaining of the attorney. Counsel filed a motion to withdraw at 9 a.m. on Friday, April 4, 2008." (*Id.*, ¶ 49). Plaintiff alleges that over the weekend his cell was "stifling" and that he was

"antagonized" by defendants Wickstrom and Yonkman before the Monday hearing on his attorney's "surprise motion." (*Id.*, ¶ 49).

Plaintiff states that "retained counsel who had withdraw[]n then refused to refund any of his fee to handle the case. The Plaintiff was then forced to accept appointed counsel. This attorney was now, on the eve of the trial date, refusing to file any of the motions that retained counsel had stated in writing that he was going to file. For this reason, Plaintiff wrote the Circuit Court again, complaining of his attorney's conduct, on approximately June 28, 2008." (*Id.*, ¶ 54).

### 6. July 2008 Hearing on Plaintiff's Fourth Attorney's Motion to Withdraw

Plaintiff alleges that he was "groggy and out of character" during a "surprise" July 9, 2008 hearing on his fourth attorney's motion to withdraw. He blames his lack of focus on a muscle relaxant that Dr. Ureta had prescribed for his back pain. (*Id.*, ¶ 59). "The Plaintiff's attorney accused him of asking counsel to do 'repugnant' things that would be a violation of the professional code of ethics, but refused to elaborate. The Plaintiff was not even allowed to view the motion. This proceeding was antagonistic in nature, with counsel, the prosecutor and court all enticing Plaintiff to agree to proceed in Propria Persona. The Plaintiff refused, and counsel's motion to withdraw was denied." (*Id.*, ¶ 60).

On September 4, 2008, the jury found plaintiff guilty. After conviction, but before he was sentenced, plaintiff discovered a cyst on his back. He was transported from the jail to Dr. Ureta's office for treatment. Dr. Ureta gave plaintiff a prescription for antibiotics. (*Id.*, ¶ 66). On October 7, 2008, plaintiff was transferred into the MDOC's custody. (*Id.*, ¶ 67).

### 7.    Grievances

Plaintiff filed five grievances during his confinement at MCJ.  On December 8, 2007, plaintiff filed a grievance complaining that he needed a "mechanical soft" diet.  The grievance response indicated that he was receiving a soft diet.  (docket # 29-2 at ID # 370).

On April 6, 2008, plaintiff filed a grievance asking that he be transferred from his maximum security cell to a medium security cell.  The response advised plaintiff that movement of prisoners between sections of the jail was a discretionary matter of jail administration.  (docket # 29-5, ID#s 413-14).

On April 7, 2008, plaintiff filed a grievance complaining that it was too hot in the "back max" area.  In response to this complaint, the heat was turned down and the maintenance department checked the ventilation.  (docket # 29-5 at ID #s 410-11).

On March 10, 2008, plaintiff filed a grievance complaining that the sink in his cell was not being properly maintained.  It would stick in the "on" position, and inmates would walk away without shutting off the water.  The response indicates that the plumber had ordered the necessary replacement part and that it had not yet arrived.   (docket # 29-5 at ID # 407).

On July 11, 2008, plaintiff filed a grievance complaining that he had been moved back to the maximum security area of the jail on April 5, 2008, so that he would be "pre-disposed" to express his anger at the April 7, 2008 hearing on his attorney's motion to withdraw.  The grievance response advised plaintiff that he had been moved for purposes of jail administration.  (docket # 29-5, at ID # 419-20).

Plaintiff initiated this lawsuit by complaint filed on November 19, 2009.  The court granted leave to file an amended complaint, which was submitted on May 18, 2010.  Read with the required liberality, the amended complaint asserts the following general claims.

Count I:  Due Process.  Plaintiff alleges that jail officials denied him due process, leading to his giving of an involuntary statement that later led up to his conviction.  He also alleges due process claims arising from the conditions of his confinement in the county jail.  In this context, he mentions specific allegations against the individual defendants assigned to the jail.

Count II:  Deliberate Indifference to Serious Medical Needs.  This count asserts constitutionally inadequate health care, especially in response to plaintiff's withdrawal symptoms.

Count III: Equal Protection.  This claim reasserts plaintiff's complaints about medical care, alleged in terms of an equal protection violation.

Count V: Retaliation.  This claim is against defendant Martin alone.  Plaintiff asserts that Lt. Martin's decision to place him in segregation came in retaliation for his exercise of First Amendment rights.

## Discussion

**1.    Heck Bar**

Plaintiff cannot challenge his conviction and sentence under 42 U.S.C. § 1983.  Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his

confinement and seeks immediate or speedier release. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973). The Supreme Court has held that a civil rights claim that necessarily implies the invalidity of plaintiff's criminal conviction is not cognizable under § 1983 until plaintiff's conviction has been overturned. In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). Many of plaintiff's claims fall within this category. He was not successful in his state-court efforts to attack the knowing and voluntary nature of his November 30, 2007 statement. He was not able to persuade Michigan's courts that medication prevented him from understanding the nature of the criminal proceedings and actively participating in his defense. Plaintiff's claims challenging the validity of his statement, the conduct of his defense counsel, the rulings of the trial judge, and his mental state relative to the criminal prosecution all tend to undermine the validity of his criminal conviction and sentence and must be dismissed, because they are *Heck*-barred. Even though the amended complaint does not expressly seek relief against plaintiff's criminal conviction, claims for damages that tend to undermine the validity of his conviction must be dismissed without prejudice. *See Heck*, 512 U.S. at 486-87.[4]

---

[4] Defendants have not raised the bar of *Heck v. Humphreys* in their motions to dismiss. The court nevertheless has the obligation to review prisoner complaints filed *in forma pauperis* and to dismiss allegations that fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B); 1915A(b). The *Heck* bar may be raised by the court in reviewing cases under these statutes. *See, e.g., Partee v. Engler*, 59 Fed. App'x 783 (6th Cir. 2003).

2.    **Motion by Missaukee County Defendants: Failure to Exhaust Administrative Remedies**

The Missaukee County defendants raise a single ground for dismissal of this action -- plaintiff's failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a).  Under *Jones v. Bock*, this is an affirmative defense, on which the defendant bears the burden of proof.  549 U.S. at 216.  Thus, a plaintiff is not required to plead exhaustion of remedies in his complaint.  *Id.* The defendant's burden on this issue can rarely be carried by motion to dismiss under Rule 12(b)(6), because dismissal on the basis of an affirmative defense is only appropriate when the defense is established "on the face" of plaintiff's complaint.  *Jones*, 549 U.S. at 215; *see Frees v. Duby*, No. 1:10-cv-609, 2010 WL 4923535 (W.D. Mich. Nov. 29, 2010); *Werdlow v. Caruso*, No. 09-11009, 2009 WL 4948490, at * 6 (E.D. Mich. Dec. 14, 2009) ("[F]ailure to exhaust administrative remedies is not a proper ground for dismissal under Rule 12(b)(6).").  The five grievances that plaintiff attached to his amended complaint indicate that there was a grievance procedure available to him during plaintiff's confinement at MCJ.  The procedural requirements of the jail remain a mystery.  Nothing in the record, whether presented by plaintiff or defendants, establishes MCJ's grievance procedure during the period at issue.

Contrary to defendant's argument, the lack of exhaustion does not appear on the face of plaintiff's complaint.  Plaintiff does mention the filing of some grievances in his amended complaint, and he has attached some grievance materials to his complaint. (*See* docket #s 29-2, 29-5 at ID#s 370, 407, 410-11, 413-14, 419-20).  A plaintiff, however, has no affirmative obligation to plead exhaustion of remedies, *Jones v. Bock*, 549 U.S. at 216, so this court cannot assume that he

-13-

has attempted to allege a complete history of his attempts to raise his claims administratively. Rather, it is *defendants* who have the burden of proving a lack of exhaustion. Instead of offering proof on this issue, the Missaukee County defendants offer the following argument in support of their claim of entitlement to dismissal of all plaintiff's claims against them based on the affirmative defense provided by 42 U.S.C. § 1997e(a):

> Plaintiff's letter addressed to Sheriff Bosscher dated January 30, 2008 (Ex. 8 to Plaintiff's Complaint) shows that Plaintiff is familiar with the steps of the grievance process. As in *Cross [v. Horton*, 80 F. App'x 430 (6th Cir. 2003)], Plaintiff in this case did nothing more than avail himself of the initial stage of the grievance process.

(docket # 41, Def. Brief at 5). This above-quoted argument is legally indefensible. Plaintiff's "familiarity" with a grievance process says nothing about whether he actually exhausted his administrative remedies. Exhibit 8 does not establish that plaintiff abandoned his grievances at the initial stage of the grievance process. Statements of counsel in briefs are no substitute for proof. *See Duha v. Agrium*, 448 F.3d 867, 879 (6th Cir. 2006).

Defendants' reliance on the Sixth Circuit's unpublished decision in *Cross* and utter disregard for the more recent, contrary, and controlling Supreme Court precedent of *Jones v. Bock* is inexplicable. The 2003 decision in *Cross* was based on then-existing Sixth Circuit authority, which had treated exhaustion as part of the plaintiff's claim, and had required prisoners to demonstrate exhaustion of their administrative remedies. *Cross v. Horton*, 80 F. App'x 430, 432 (6th Cir. 2003). The Supreme Court's decision in *Jones v. Bock* overruled this line of Circuit authority. An examination of the Supreme Court's decision in *Jones v. Bock*, or any Sixth Circuit decision addressing 42 U.S.C § 1997e(a) after January 2007, should have alerted defendants'

attorney that his clients bear the  burden to prove the affirmative defense of lack of exhaustion.  *See Grinter v. Knight*, 532 F.3d 567, 578 n.8 (6th Cir. 2008); *Okoro v. Hemingway*, 481 F.3d 873, 874 (6th Cir. 2007); *see also Vandiver v. Correctional Med. Services, Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009) ("[I]t is now clear that a prisoner may not be required to specifically plead or demonstrate exhaustion in his complaint.  Rather, a prisoner's failure to exhaust under § 1997e(a) is an affirmative defense on which the defendant bears the burden of proof.")(internal citation omitted).

To sustain their burden of proving this affirmative defense, the Missaukee County defendants would be required to move for summary judgment, supply the court with both the relevant grievance policies and an authenticated factual record of all grievances pursued by plaintiff and the results thereof and demonstrate the manner in which plaintiff has failed to exhaust each claim.  They have failed to do this, so the record is completely inadequate to allow review of this issue.  The Missaukee County defendants have not established what the jail's grievance procedure was, much less that plaintiff failed to pursue all his claims through the final step of the administrative process.  Their Rule 12(b)(6) motion to dismiss must be denied.

3.    **Motion of Lake City**

Lake City is a municipal defendant seeking dismissal of all plaintiff's claims against it under Rule 12(b)(6).  In *Monell v. Dep't of Soc. Servs.*,436 U.S. 658, 691 (1978), the Supreme Court held that municipalities may not be held liable on a *respondeat superior* theory.  436 U.S. at 691.  Liability may only be found against a municipality when its employees have acted pursuant to an official policy or custom.  *Id.* at 694-95; *see Graham ex rel. Graham v. County of Washtenaw*,

358 F.3d 377, 382 (6th Cir. 2004). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality. Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997) (citations omitted). "[I]t is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404. "There must be a direct causal link between the policy and the alleged constitutional violation such that the County's 'deliberate conduct' can be deemed the 'moving force' behind the violation. These stringent standards are necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*." *Graham*, 358 F.3d at 383 (citations omitted). "A plaintiff asserting a § 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of execution of that policy." *Graham*, 358 F.3d at 383.

Plaintiff falls well short of stating a claim against Lake City under section 1983. Plaintiff has not alleged conduct attributable to Lake City, much less satisfied the other requirements

for municipal liability discussed above. No individuals employed by the city are defendants in this case. The Sheriff is a county employee . He has charge and custody of the jails in his county and the prisoners therein. MICH. COMP. LAWS § 51.75.

> In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich.1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*" ).

*Price v. Bailey*, No. 1:09-cv-12, 2009 WL 198962, at * 2 (W.D. Mich. Jan. 26, 2009). The Sheriff, and not Lake City, enjoys final policy-making authority over the county jail. *See Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005).

Lake City cannot possibly be legally responsible for events occurring at the jail. The complaint fails to state a claim for municipal liability under *Monell*. I recommend that Lake City's motion to dismiss be granted and that all plaintiff's claims against Lake City be dismissed with prejudice.

### 4.    Motion of Dr. Ureta

Dr. Ureta has moved to dismiss the complaint on two grounds. First, he seeks dismissal on the ground that plaintiff failed to exhaust administrative remedies, as required by 42 U.S.C. § 1997(e). This motion suffers from the same deficiencies as the motion filed by Missaukee County. Dr. Ureta incorrectly assumes that plaintiff is required to allege exhaustion in his complaint

and that the complaint is subject to dismissal for failure to establish that the exhaustion requirement has been fulfilled. To the contrary, a defendant has the burden of proof on this issue, and plaintiff has no obligation to demonstrate exhaustion at the pleading stage. Dismissal of the case at this point would be gross error.

Defendant Ureta's second ground for dismissal is that plaintiff's complaint, accepted as true, fails to state a claim upon which relief can be granted. For the reasons set forth below, I conclude that this argument is not meritorious and recommend that Dr. Ureta's motion be denied.

Plaintiff sues defendant Ureta under 42 U.S.C. § 1983. (Am. Compl., ¶¶ 1, 5). To state a viable claim for relief in a section 1983 action, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States and that defendant committed the alleged deprivation "under color of state law." *See Am. Mfg. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Plaintiff alleges that Dr. Ureta is a physician who is employed by or contracts with Missaukee County. (Am. Compl., ¶ 11). Although Dr. Ureta denies this allegation, it must be accepted as true for present purposes. Dr. Ureta's motion does not contest the conclusion that Dr. Ureta acts under color of state law in treating county prisoners. *See West v. Atkins*, 487 U.S. 42 (1988). In the absence of a factual challenge on this issue, the court must assume that Dr. Ureta acted under state law when he treated, or failed to treat, plaintiff during his stay in the county jail.

As a pretrial detainee awaiting adjudication of criminal charges in the Missaukee County Circuit Court, plaintiff's substantive federal right to adequate medical care was guaranteed by the Due Process Clause of the Fourteenth Amendment. *See Spears v. Ruth*, 589 F.3d 249, 254

(6th Cir. 2009). Once plaintiff was convicted of felony charges, his substantive federal rights were guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The Sixth Circuit holds that the standard for medical care under the Due Process Clause of the Fourteenth Amendment is essentially the same as guaranteed to convicted prisoners by the Eighth Amendment. *See Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). Both the Eighth and Fourteenth Amendments prohibit deliberate indifference to a prisoner's serious medical needs. *Spears*, 589 F.3d at 254.

A prisoner claiming violation of this right must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To satisfy the objective component, a plaintiff must allege a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). To satisfy the subjective component, a plaintiff must establish that the defendant knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The deliberate indifference standard requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs is essential to a finding of deliberate indifference." *Miller v. Calhoun County*, 408 F.3d at 813 (citations and quotations omitted).

Dr. Ureta's motion does not seriously contest the existence of the objective component of a constitutional violation, namely, the existence of a serious medical need. Plaintiff's 52-page complaint is replete with allegations, which must be accepted as true for purposes of Rule 12(b)(6), that plaintiff suffered from a serious medical condition while an inmate at the jail. Plaintiff alleges that he was under a doctor's constant care for work-related back injury, that he was taking prescription methadone tablets for pain, and that he was physically and mentally dependent on the drug. (Am. Compl., ¶ 22). He asserts that he was experiencing "severe back pain" and was "extremely ill" two days after arriving at the jail. (*Id.*, ¶ 24). He asserts that two days later, he was "vomiting uncontrollably" and had "uncontrollable bowel movements" causing him "extreme pain," and that he was in a "surreal state." (*Id.*, ¶ 27). He asserts that jail personnel promised that he would see Dr. Ureta on November 28, 2007. (*Id.,* ¶¶ 23-24), but that he did not seek the doctor for 9-1/2 months. (*Id.*, ¶ 31). Although he blames all defendants for the nine-month delay, plaintiff specifically alleges that Dr. Ureta failed to address his medical needs in a reasonable time. (*Id.*, ¶ 81(C)), and "failed or refused to examine or consult with plaintiff during a ten-month period regarding his chronic back pain." (*Id.*, ¶ 91(A)). Plaintiff alleges that after seven weeks of incarceration, Dr. Ureta prescribed a drug called "Tramadol" for pain, but that the doctor did so without seeing plaintiff. (*Id.*, ¶ 50). When plaintiff finally saw the doctor, after over nine months of delay, he had a cyst on his back, which Ureta treated with an antibiotic. (*Id.*, ¶ 66). These allegations, accepted as true, allege the existence of serious medical conditions.

In addition to alleging the objective component of a deliberate indifference claim, a plaintiff must satisfy the subjective component, that is, that defendant knew of and disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. To support an inference of deliberate indifference, a plaintiff must allege facts showing that a particular defendant "knew of" and disregarded a serious threat to health. *See Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010). Dr. Ureta argues at length that the complaint fails to establish this element of the claim. Dr. Ureta cites the general rule that, where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, "federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Dr. Ureta argues that this principle entitles him to dismissal of the complaint, because plaintiff admits that the doctor provided him with antibiotics and other treatment. Dr. Ureta's arguments go well beyond the bounds of the law. The Sixth Circuit case that defendant relies on, *Westlake v. Lucas*, went on to find that the plaintiff adequately stated a claim for deprivation of his Eighth Amendment rights that should not have been dismissed under Rule 12(b)(6), because the prisoner alleged that he was forced to "endure a period of intense discomfort because his pleas for medical assistance went unheeded by his jailers." 537 F.2d at 861. Despite the federal court's general reluctance to second-guess medical judgment, a defendant-doctor is not entitled to dismissal merely by asserting that he did something in response to a serious medical need.

> [P]rison officials may not entirely insulate themselves from liability under § 1983
> simply by providing some measure of treatment. Indeed, deliberate indifference may
> be established in cases where it can be shown that a defendant rendered "grossly

inadequate care" or made a "decision to take an easier but less efficacious course of treatment."

*Jones v. Muskegon County*, 625 F.3d 935, 944-45 (6th Cir. 2010) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)). Deliberate indifference can arise where a physician is aware that an inmate is in distress and the physician purposely ignores the distress knowing that an adverse outcome is likely to occur. *See Jones v. Muskegon County*, 625 F.3d at 945.

Despite Dr. Ureta's arguments, plaintiff's allegations are sufficient to meet the pleading requirement regarding the subjective element of a deliberate indifference claim. Plaintiff alleges that he was denied medical care for over nine months and blames Dr. Ureta, among other defendants, for the situation. (Am. Compl., ¶¶ 81(C), 91(A)). He alleges that the jail staff notified Ureta that plaintiff had a methadone prescription prescribed for pain, but that Ureta failed or refused to respond. (*Id.*, ¶ 81(E)). He also alleges that Ureta allowed him to undergo suffering during withdrawal from methadone, (*Id.*, ¶¶ 91(D), (E)), and that he prescribed medications without seeing plaintiff. (*Id.*, ¶¶ 91(F), (G)). The amended complaint states a plausible claim for culpable delay or denial of medical treatment, especially given the leniency accorded *pro se* pleadings. Plaintiff's complaint is sufficient to withstand a motion to dismiss.

It may well be that the medical and jail records will establish, beyond genuine issue, the circumstances surrounding plaintiff's medical condition while he was incarcerated, the identities of those who were aware of his condition, their reasons for acting or not acting, and the steps that they took to provide adequate medical care. When a plaintiff alleges the existence of a serious medical condition, the court cannot adjudicate a deliberate indifference claim on the basis of

-22-

assertions made by defense counsel in their briefs, unsupported by any admissible evidence.  The

factual record, and not argumentation, will determine whether plaintiff has a viable claim for

deliberate indifference to a serious medical need.

## Recommended Disposition

For the foregoing reasons, I recommend that the motion to dismiss by defendant Lake

City (docket # 36) be granted.  I recommend that the motion to dismiss by the Missaukee County

defendants (docket # 41) be denied, that the motion to dismiss by Dr. Ureta (docket # 22) be denied,

and that these defendants be ordered to answer the amended complaint.  Finally, I recommend that

all claims involving plaintiff's criminal case, including challenges to the effectiveness of his counsel,

his competency to stand trial, allegedly coercive interrogation, and the admissibility of his statements

to police, be dismissed without prejudice.


Dated:   March 28, 2011                    /s/  Joseph G. Scoville
                                                        United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within
fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All
objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file
timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas
v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129
S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).   General
objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*,
454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).