UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| ROBERT ALLEN BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-1059 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COUNTY OF MISSAUKEE, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | |
| _____ | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Although plaintiff is currently an inmate of the Michigan Department of Corrections, the events giving rise to this lawsuit occurred at the Missaukee County Jail, while plaintiff was being held as a pretrial detainee and later as a convicted felon awaiting sentencing. By opinion and order entered May 3, 2011, District Judge Robert Holmes Bell granted the motion to dismiss brought by defendant Lake County but denied similar motions by the Missaukee County defendants and defendant Dr. Ureta. The court further dismissed all claims that tended to challenge plaintiff's conviction in his criminal case. (Op. & Ord., docket #s 67, 68). The effect of Judge Bell's order was to allow plaintiff to continue to litigate his Eighth Amendment claims against Dr. Ureta and the Missaukee County defendants arising from allegedly inadequate medical and dental treatment while plaintiff was incarcerated in the county jail.

After the entry of Judge Bell's order, the court issued a case management order governing the progress of this case. (Order, docket # 81). The case management order, entered after

the court considered written submissions by all parties, required plaintiff to disclose the identity of testifying experts by August 1, 2011, and defendants to do so by September 1, 2011. The order established January 16, 2012, as the discovery cutoff date, and set deadlines for the filing of dispositive motions. A Jury trial will take place in August 2012.

The matter is before the court on two motions by plaintiff. The first is plaintiff's third motion seeking the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). (docket # 89). The second is plaintiff's motion for extension of time to name testifying experts and for appointment of an expert witness to testify on plaintiff's behalf. For the reasons set forth below, the court will deny both motions.

**1.**

Plaintiff again seeks an order providing him with free legal counsel, and has submitted a ten-page brief in support of his request. As the court has twice pointed out to plaintiff in the past, the Constitution does not guarantee to civil litigants a due-process right to free counsel. *See Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The court's ability to provide free counsel to a civil litigant is governed by the federal *in forma pauperis* statute, which provides that a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The statute's use of the word "may" clearly indicates that the matter is within the court's discretion. Congress has appropriated no funds to compensate *pro bono* counsel, and even the use of the word "appoint" is misleading. As the *in forma pauperis* statute makes clear, the court is only in a position to ask a lawyer to afford free legal services. Congress's use of the word "request" allows "courts to ask but not compel lawyers to represent indigent[s]." *Mallard v. U.S. Dist. Court*

*for So. Dist. of Iowa*, 490 U.S. 296, 307 (1989).  Section 1915(e)(1) thus codifies a district court's discretionary authority to recruit a lawyer to provide *pro bono* representation to an indigent plaintiff, but it "does not authorize the federal courts to make coercive appointments of counsel." *Mallard*, 490 U.S. at 310.  Thus, the court faces the same task as is faced by plaintiff and his family -- recruiting a volunteer lawyer to handle a case without promise of remuneration.

The Sixth Circuit has established guidelines to guide the district court in the exercise of its discretion in this area.  *See Lavado*, 992 F.2d at 606.  The court has repeatedly admonished that "only in exceptional circumstances will the privilege of court-appointed counsel be justified in a civil case."  *Gregg v. SBC/Ameritech*, 321 F. App'x 442, 447 (6th Cir. 2009) (citing *Lavado*, 992 F.2d at 606); *accord, Jennings v. Bradley*, 419 F. App'x 594, 598 (6th Cir. 2011).[1]  The determination whether provision of *pro bono* counsel is justified by "exceptional circumstances" requires consideration of the complexity of the issues and plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.

Plaintiff strenuously argues that the issues in his case are complex and require the assistance of counsel.  Plaintiff's presentation, however, is completely argumentative and presents no real basis for concluding that this case is any more complex than the general "deliberate indifference" case litigated on a regular basis by *pro se* plaintiffs in this court.  (*See* Motion, docket # 89, at 4-5).  Prisoners regularly challenge the adequacy of the medical treatment that they receive while incarcerated.  Unlike many cases, which involve a course of treatment over a long prison stay,

---

[1] Other circuits reject the Sixth Circuit rule and apply a more lenient standard.  *See, e.g., Montgomery v. Pinchak*, 294 F.3d 492, 499 n.9 (3d Cir. 2002).  To the extent that plaintiff relies on such out-of-circuit authority, this court is bound to follow Sixth Circuit precedent and not the contrary authority of other circuits.

plaintiff's case deals with a relatively short time of incarceration in a county jail. Plaintiff has presented no basis for concluding that this case is "extraordinarily" complex or even that it is more complex than the average case.

The court should also analyze plaintiff's apparent ability to prosecute the case without the help of counsel. *Lavado*, 992 F.2d at 606. Plaintiff has shown himself more capable than the average *pro se* litigant. Plaintiff capably opposed the motion to dismiss, resulting in the issuance of a report and recommendation (docket # 64) that recommended dismissal of plaintiff's claims against only the most remote defendants. Plaintiff then objected to the report and recommendation and was successful in persuading the district judge to uphold his objections in several respects. (Op., docket # 67). Review of the presently pending motions shows that plaintiff is capable of doing legal research and of presenting his arguments in a cogent fashion. Even the nonbinding out-of-circuit authority relied on by plaintiff requires a finding of a prisoner's "incompetence" in presenting his own claims. *See, e.g., Pruitt v. Mete*, 503 F.3d 647, 659 (6th Cir. 2007) (*en banc*). Plaintiff's performance in this case to date is far from incompetent and is probably much better than average. Plaintiff's entire argument is based on the assertion that he has a limited ability to do legal research and to investigate his claims, especially with regard to witnesses outside prison walls. This assertion could be made, however, by every prisoner plaintiff in every case. Accepting this argument would require the court to "appoint" counsel in over a thousand prisoner cases a year, which is plainly impossible. More to the point, the Sixth Circuit has rejected similar arguments based on the mere fact of prisoner status. *See, e.g., Lince v. Youngert*, 136 F. App'x 779, 782-83 (6th Cir. 2005).

Finally, plaintiff asserts that he has been unable to find willing counsel through his own means. This is a two-edged sword. Indigent plaintiffs with meritorious cases are generally able

to find counsel willing to work on a contingent-fee basis.  A plaintiff's inability to retain counsel is often an indication that attorneys see little merit in plaintiff's claim.  The fact that attorneys are unwilling to accept a case is hardly reason to pressure a lawyer to take the case against his or her will.  Moreover, plaintiff has contacted very few attorneys who take this kind of case.  Plaintiff directed many of his requests for representation to law school clinics that specialize in post-conviction criminal matters, not civil rights cases.[2]

In summary, this case does not present extraordinary circumstances meriting the exercise of the court's discretion to request *pro bono* representation under 28 U.S.C. § 1915(e)(1).  The case presents a discrete issue -- the adequacy of the medical care afforded plaintiff during a discrete period of time -- and plaintiff has successfully litigated the case to this point.  Plaintiff's third motion for appointment of counsel will therefore be denied.

**2.**

Plaintiff also seeks relief from the case management order.  A case management order may only be modified upon a showing of good cause.  FED. R. CIV. P. 16(b).  Good cause is "measured by the movant's diligence in attempting to meet the case management order's requirements."  *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).  The party seeking relief must demonstrate why the requirements of the order could not reasonably have been met in the exercise of diligence.  *See Leary*, 349 F.3d at 907.

---

[2] This court has recently instituted a *pro bono* program with Michigan State Law School, which has initiated a civil rights clinic.  The MSU program generally limits its representation to those plaintiffs with meritorious cases who have successfully resisted a motion for summary judgment.  Although the present case has not yet reached the summary judgment stage, plaintiff may wish to contact the MSU clinic, Daniel E. Manville, Esq., Michigan State University College of Law, Civil Rights Clinic, 610 Abbott Road, East Lansing, MI 48823.

Plaintiff does not meet the good-cause standard. The court notes that plaintiff waited until early September 2011 in which to seek an extension of the time to name testifying experts. This was over one month after the expiration of the deadline in the case management order. This delay does not support a claim of good cause. Plaintiff also does not identify how much more time he needs and what, if anything, he would do with an extension of time. The court notes that this case has been pending for nearly two years, during which time plaintiff could have been seeking the help he needs. The court does not lightly entertain late-filed motions to extend case management orders, when the effect would be an indefinite delay of the case. It is in the best interests of both the parties and the public that civil rights actions be handled in a reasonably expeditious fashion by the federal court. Plaintiff has not shown good cause for further delay of this case.

In the same motion, plaintiff seeks appointment of an expert witness pursuant to Rule 706 of the Federal Rules of Evidence. Plaintiff misperceives the purpose of Rule 706. The rule does not provide a method by which the court may afford expert witness testimony to an indigent litigant at public expense. Congress has not appropriated any funds for the hiring of expert medical witnesses to support the claims of indigent civil litigants. To the contrary, the Sixth Circuit has consistently held that a prisoner's right of access to the courts does not entitle him to have the public fund his general litigation expenses, such as witness fees. *See Johnson v. Hubbard*, 698 F.2d 286, 288-89 (6th Cir. 1983); *accord Pedraza v. Jones*, 71 F.3d 194, 196 (5th Cir. 1995) (district court lacked authority to appoint an expert witness at public expense to aid indigent litigant).

Rule 706 does invest the court with discretion to appoint an expert witness and to apportion the expert's fees between the parties, if necessary to aid the court. *See Dodson v. Wilkinson*, 304 F. App'x 434, 442 (6th Cir. 2008). In a case such as the present one, appointment

of an expert would require the court to impose the entire cost of the expert on defendants, the only parties with the ability to pay. Although the court has the ability to grant such relief, it requires a strong showing both that plaintiff's case is meritorious and that the appointment of a Rule 706 expert is necessary to aid the court. *See Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008). Plaintiff has made neither showing.

## **Conclusion**

Plaintiff's third motion for appointment of counsel (docket # 89) and his motion for extension of time and for appointment of expert witnesses (docket # 90) will be denied.


Dated: September 26, 2011            /s/ Joseph G. Scoville
                                     United States Magistrate Judge