UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| ROBERT ALLEN BAKER, #182416, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-1059 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COUNTY OF MISSAUKEE, et al., | ) | **OPINION** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. §1983. The events giving rise to this lawsuit occurred at the Missaukee County jail, first while plaintiff was being held as a pretrial detainee (November 26, 2007, to September 4, 2008), and later as a convicted felon awaiting sentencing (September 5, 2008, to October 7, 2008). (Am. Compl. ¶ 21, docket # 29). The defendants are Missaukee County and eleven of its employees, collectively referred to as the Missaukee County defendants, and Sotero Ureta, M.D.

The matter is before the court on plaintiff's motions to compel discovery against Missaukee County defendants. (dockets # 134, 143, 144, 184). Discovery in this case closed in 2012. (docket # 81). Plaintiff's motions were initially denied because they were untimely but the district judge later determined that the motions were timely, and should be addressed on their merits. (docket #s 214, 215).

## I.    Interrogatories

### A.    Missaukee County

Plaintiff alleges that Missaukee County violated his rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II).  (*See* Am. Compl. ¶¶ 79, 82, docket # 29, ID#s 332, 339).  He asks the court to compel Missaukee County to answer interrogatories 1, 4, 5, 6, 7, 8, and 13.  (docket # 144 at 23, ID# 1080).  Plaintiff argues that defendant's answers to his interrogatories were untimely and defendant's objections should be deemed waived.  (*Id.*).

The contested interrogatories were served on August 11, 2011.  (docket # 86).  Rule 33(b)(2) states:  "The responding party must serve its answers and any objections within 30 days after being served with the with the interrogatories."  FED. R. CIV. P. 33(b)(2).  Missaukee County served its response to plaintiff's interrogatories on December 12, 2011, three months late.  (docket # 126).  Rule 33(b)(4) states that "any ground not stated in a timely objection is waived unless to court, for good cause, excuses the failure."  FED. R. CIV. P. 33(b)(4).  Defendant has not shown good cause.[1]  Defendant's objections to the interrogatories at issue are waived.

Plaintiff's interrogatory 1 was a question regarding how long Dr. Ureta had been treating prisoners at the Missaukee County jail:

---

[1] Defendants' submission in response to plaintiff's motions to compel consists of a series of numbered paragraphs treating plaintiff's motions as if they were pleadings.  (docket # 149). Defendants admit, deny, or neither admit or deny, various assertions.  (*Id.* at ¶¶ 1-16, ID#s 1092-94). This format is useless to the court.  In order to resolve discovery disputes, the court requires a brief addressing each discovery request at issue and the argument and legal authority supporting each objection and/or answer provided.  Thus, in addition to ignoring the response deadline in Rule 33, defense counsel ignored this court's Local Civil Rule 7.1(a), which requires a brief in opposition to motions.

1. How long has Dr. Sotero Ureta been the primary doctor for the county to treat prisoners at MCJ?

ANSWER: Defendant objects to the form of this question and the use of the term "primary." Without waiving said objection, state that Dr. Ureta has been providing physician services for the jail since 1998. There is no contract for Dr. Ureta's services.

(docket # 184-4, ID# 2055). Plaintiff has not shown any deficiency in the above-quoted answer.

Interrogatory 4 asked for an "overview" of how Missaukee County conducts performance evaluations of the sheriff:

4. Provide an overview of how the County evaluates Sheriff Bosscher's performance as it relates to the normal operation at the MCJ.

ANSWER: Defendant objects to the form of this interrogatory and its basis as speculative. The Missaukee County Sheriff is an elected position, and therefore, the position is not subject to "performance" evaluation by the County. Without waiving said objections, state that all Sheriff's Department policies and procedures are reviewed on an annual basis. Further, the Michigan Department of Corrections inspects and certifies the Missaukee County Jail on an annual basis.

(docket # 184-4, ID# 2055). Plaintiff argues that his question "has not been answered," without further elaboration. (docket # 144 at 23, ID# 1080). The court finds that defendant's response is adequate.

Interrogatory 5 inquired about periodic reviews of the sheriff's policies:

5. Specifically explain how the county does period reviews of the Sheriff's policies regarding the providing of medical services to prisoners at the MCJ, such as processes, etc.

ANSWER: Defendant objects to the form of this interrogatory and its basis as speculative. The Missaukee County Sheriff is an elected position, and therefore, the position is not subject to "performance" evaluations or review by the County. Without waiving said objections, state that all Sheriff's Department policies and procedures are reviewed on an annual basis.

(docket # 184-4, ID#s 2055-56). Plaintiff asks the court to compel an "appropriate" answer without further elaboration. (docket # 144 at 23, ID# 1080). The response provided by Missaukee County was adequate.

Plaintiff asked the court to compel answers to interrogatories 6 and 8, but his arguments were limited to defendant's now-overruled objections. (docket # 144 at 23, ID# 1080). Plaintiff has not shown any deficiencies in defendant's answers which followed the objections. (docket # 184-4, ID# 2056).

Plaintiff argues that defendant's answers to interrogatories 7 and 13 were deficient. (docket # 144 at 23, ID# 1080). Interrogatory 7 was so poorly phrased that it was impossible to answer:

> 7. Explain how the County could be unaware if prisoners, for the time in question but not limited to, that prisoners were not being provided with health care during the drug and/or alcohol withdrawals [sic]? In other words, if those services have never been provided, how could the County not be aware of it?

(docket # 184-4, ¶ 7, ID# 2056). Defendant's answer was: "Defendant does not understand the question, and therefore cannot answer it. To the extent that this interrogatory assumes that adequate healthcare is not provided to inmates at the Missaukee County Jail, it is untrue." (*Id.*). The court will not, indeed cannot, order any further response to plaintiff's unintelligible interrogatory.

Plaintiff's interrogatory 13 inquired about the training of EMTs:

> 13. What training is required by Missaukee County before hiring E.M.T. employees?
>
> ANSWER: EMTs and Paramedics employed by Missaukee County are required to be licenced and/or certified by the State of Michigan. Each license and/or certificate requires specific training and experience as either a Medical First Responder, Basic EMT, EMT Specialist, or Paramedic, as set by the State of Michigan.

(docket # 184-4, ID# 2055).  Plaintiff argues that Missaukee County "refus[ed] to answer the question" because it was intended as a question regarding the "specific training referred to in defendant's answer." (docket # 144 at 23, ID# 1080).  Defendant gave a fair response to the question plaintiff asked.  The court will not order any further response.

B.     Bosscher

Plaintiff alleges that Sheriff James Bosscher violated his rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II).  (*See* Am. Compl. ¶¶ 82, 92, ID#s 334-35, 342-43).  Plaintiff argues that defendant Bosscher's objection to interrogatory 3 was "untimely and is waived." (docket # 144 at 24, ID# 1081).  Plaintiff is correct that defendant waived the objection (*see* docket #s 86, 126), but no further response is required because defendant Bosscher went on to answer plaintiff's interrogatory and plaintiff has not shown any deficiency in his answer.  (docket # 184-4, ID# 2060).

C.     Martin

Plaintiff alleges that Lieutenant Andrea Martin violated his rights under the Fourteenth Amendment's Due Process Clause (Count I), the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II), the Fourteenth Amendment's Equal Protection Clause (Count III), and the First Amendment's Free Speech and Petition Clauses (Count IV).  (*See* Am. Compl. ¶¶ 83, 93, 100-02,  ID#s 336-37, 347).  Plaintiff asks the court to compel defendant Martin to answer interrogatories 2 and 4.  (docket # 144 at 24, ID# 1081).  Interrogatory 2 was a multi-part interrogatory regarding other criminal or civil actions against defendant Martin:

2.      Have you ever been named as a defendant in a civil or criminal lawsuit? If so, for each lawsuit, state the name of the suit, the date of filing, the case number, if there was a tr[ial] and the ultimate disposition of the case, including any liability found, and judgment or sentence imposed.

ANSWER: Defendant has never been named in a criminal action. Outside this litigation, Defendant was named as a defendant in a civil action in 1996. Defendant does not have any records of this litigation, nor any record of the disposition. Defendant does not recall the details of the action, was never called to testify, did not give deposition testimony, and does not recall the disposition of the case.

(docket # 184-4, ID# 2063). Plaintiff argues that Martin failed to conduct a reasonable investigation before answering this interrogatory and seeks an "order compelling a reasonable investigation and an appropriate answer" by Martin. (docket # 144 at 24, ID# 1081). A party has a duty to make a reasonable investigation before responding to interrogatories. *See*, *e.g., Watson v. Dillon Companies, Inc.*, No. 08-cv-91, 2008 WL 5104783, at * 6 (D. Colo. Dec. 2, 2008). Plaintiff has not established any deficiency in defendant's "investigation." However, Martin's answer is deficient in that she failed to identify the court in which she was named as a defendant in a civil action and the case number. Although information related to a civil lawsuit filed in the 1990s is unlikely to advance any claim in this case, plaintiff has been released from prison and he is generally free to waste his time in whatever manner he chooses, including looking up public records regarding old court cases. Martin will be required to supplement his answer to interrogatory 2.

Plaintiff disagrees with defendant Martin's answer to interrogatory 4. Plaintiff asked defendant to: "Explain why you did not, at any time, secure medical attention, i.e., doctor[']s visit with Dr. Ureta or other doctor, for the Plaintiff's serious medical needs." Lieutenant Martin gave the following answer: "Plaintiff was provided medical attention for every objectively serious need

while incarcerated in the Missaukee County Jail." (docket # 184-4, ID#s 2063-64). Plaintiff's

disagreement with defendant's response is not a foundation for granting a motion to compel. *See*

*Grant v. Target Corp.* No. 2:10-cv-823, 2013 WL 5366102, at * 3 (S.D. Ohio Sept. 24, 2013)("[A]

motion to compel is not the correct way for [plaintiff] to argue about the factual accuracy of [the

defendant's] responses."); *Stukes v. Chertoff*, No. 3:06 CV 316, 2008 WL 178468, at * 1 (W.D. N.C.

Jan. 18, 2008)("Plaintiff's disagreement with the substance of Defendant's responses does not

constitute a factual basis for a meritorious Motion to Compel as a matter of law.").

## II.     Requests for Admissions

### A.     Governing Principles

"Requests for admissions are not a general discovery device." *Misco, Inc. v. U.S.

Steel Corp.*, 784 F.2d 198, 205 (6th Cir. 1986). "Requests for admissions and interrogatories are not

interchangeable procedures."[2] *Estate of Fahner v. Wayne County*, No. 08-cv-14344, 2009 WL

4644788, at * (E.D. Mich. Dec. 3, 2009). Rule 36's "proper use is as a means of avoiding the

necessity of proving issues which the requesting party will doubtless be able to prove." *Hamilton*

*v. Spurling*, No. 3:11-cv-102, 2013 WL 1165034, at * 1 (S.D. Ohio Mar. 20, 2013)(quoting *Khami*

*v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 09-cv-11464, 2011 WL 996781, at * 2 (E.D. Mich.

---

[2]Parties cannot avoid the limits on the number of interrogatories authorized under Rule 33(a)(1) or a specific limitation in a case management order by labeling an interrogatory as a request for admission or a request for production of documents. *See Gregg v. Local 305 IBEW*, No. 1:08-cv-160, 2009 WL 1325103, at * 3 (N.D. Ind. May 13, 2009); *see also Safeco of Am. v. Rawston*, 181 F.R.D. 441, 445-46 (C.D. Cal. 1998)("Utilizing interrogatories disguised as requests for admissions in an attempt to circumvent [] rule[s] limiting the number of interrogatories is an abuse of the discovery process.").

Mar. 17, 2011)); *see Erie Ins. Prop. & Cas. Co. v. Johnson*, 272 F.R.D. 177, 183 (S.D. W.Va. 2010) ("Rule 36(a)'s primary purposes are 'to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be.'"). "Strictly speaking Rule 36 is not a discovery procedure at all, since it presupposes that the party proceeding under it knows the facts or has the document and merely wishes its opponent to concede their genuineness. ... A party who desires to discover what the facts are should resort to other discovery rules rather than Rule 36." 8B CHARLES ALLEN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE, § 2253 at 324–25 (3d ed. 2010).

The scope of Rule 36 is limited to "matters within the scope of Rule 26(b)(1)." FED. R. CIV. P. 36(a)(1). Under Rule 26(b)(1), "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1); *see Basile Baumann Prost Cole & Assoc., Inc. v. BBP Assocs., LLC*, No. WDQ-11-2478, 2013 WL 1622001, at * 3 (D. Md. Apr. 9, 2013). "An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding." FED. R. CIV. P. 36(b); *see* Rule 36(a)(1)(The admission is "for purposes of the pending action only."); *see also Sanders v. Gross*, No. 86 C 2248, 1987 WL 10558, at * 1 (N.D. Ill. May 5, 1987). No admission obtained by plaintiff in this case under Rule 36 could be used by plaintiff to advance any ground he is asserting in his habeas corpus petition or any other lawsuit. Plaintiff does not ask for admissions "regarding the genuineness of any described documents." FED. R. CIV. P. 36(a)(1)(B). Thus, any request for admission that plaintiff is seeking must ask a defendant to admit the truth of a matter within the

scope of Rule 26(b)(1) relating to "facts, application of law to fact, or opinions about either," otherwise his request falls outside the scope of Rule 36(a)(1)(A).

"The party requesting an admission 'bears the burden of setting forth [his] requests simply, directly, and not vaguely and ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit an qualification or explanation for purposes of clarification.'" *Biernacki v. United States*, No. 11-cv-973, 2012 WL 6100291, at * 3 (W.D.N.Y Dec. 7, 2012)(quoting *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y 2003)); *see Piskura v. Taser Int'l*, 1:10-cv-248, 2011 WL 6130814, at * 1 (S.D. Ohio Nov. 7, 2011). "Qualifying a response may be particularly appropriate if the request is sweeping, multi-part, involves sharply contested issues, or goes to the heart of a defendant's liability." *Wiwa v. Royal Dutch Petroleum Co.*, No. 01 CIV 1909, 2009 WL 1457142, at *4 (S.D.N.Y. May 26, 2009); *see United States ex rel. Dyer v. Raytheon, Inc.*, No. 08-10341, 2013 WL 5348571, at * 5 (D. Mass. Sept. 23, 2013). Where the wording of a request for admission is imprecise, the responding party should set forth a qualified answer that fairly meets the substance of the request. *See Baugh v. Bayer Corp*, No. 4:11-cv-525, 2012 WL 4069582, at * 2 (D. S.C. Sept. 17, 2012)("[R]equests for admission are not games of 'Battleship' in which the propounding party must guess the precise language coordinates the responding party deems answerable."). "The court has substantial discretion to determine the propriety of such requests and the sufficiency of the responses." *National Independent Truckers Ins. Co. v. Gadway*, No. 8:10 CV 253, 2011 WL 5554802, at * 2 (D. Neb.

Nov. 15, 2011).  If the court finds that an answer does not comply with Rule 36, "the court may order either that the matter is admitted or that an amended answer be served."  FED. R. CIV. P. 36(a)(6).

B.    Missaukee County

Plaintiff served a dozen discovery requests on Missaukee County, labeled "Plaintiff's First Request for Admissions." (docket # 184-1, ID#s 1983-87).  It is undisputed that the Missaukee County's response was timely.  (docket # 144 at 2, ¶ 3, ID# 1059).  Plaintiff argues that all the objections made by Missaukee County were frivolous and not made in good faith.  (*Id.* at 4, ID# 1061).  Defendant's objections are sustained.  The purported "requests for admissions" were actually interrogatories.  Missaukee County provided answers to all the interrogatories.  (docket # 184-1, ID#s 1983-87).  Plaintiff has not shown any deficiency in defendant's answers.

C.    Bosscher

Plaintiff served six requests for admissions on defendant Bosscher.  (docket # 184-1, ID#s 1988-91).  It is undisputed that Bosscher's responses were timely.  (docket # 144 at 2, ¶ 3, ID# 1059).  Plaintiff argues Bosscher's objections to requests 1, 2, 3, 5, and 6 were "frivolous" and "not made in good faith." (docket # 144 at 4-5, ID#s 1061-62).  The court finds that defendant's objections to the form of plaintiff's requests were appropriate.  More significantly, plaintiff has not shown any deficiency in the answers Bosscher provided after objecting to the form of plaintiff's requests.  (docket # 184-1, ID#s 1988-91).

D.     Martin

Plaintiff served 17 discovery requests on defendant Martin, labeled requests for admissions. (docket # 184-1, ID#s 1992-98). It is undisputed that defendant Martin's responses were timely. (docket # 144 at 2, ¶ 3, ID# 1059). Plaintiff argues that Martin's objections as to the form of his requests were frivolous and not made in good faith. (*Id.* at 5-7, ID#s 1062-64). The court finds that defendant's objections that plaintiff's requests for admissions were actually interrogatories were appropriate. The real issues relate to whether Martin's answers after making her objections as to form were adequate.

Plaintiff argues that defendant Martin failed to provide an adequate response to request 4 because the date in his question was November 28, 2007 (docket # 144 at 5, ID# 1062), not the November 11, 2007 date appearing in defendant's response:

> 4.     Did you, also on 11/28/07, tell Plaintiff "face-to-face" that ([A]) "Your [sic] not getting your medication or anything else[,] and (B) "this is a non-narcotic facility" and that (C) " you can see the doctor next week?" See Amend. Comp., paragraph 25.
>
> RESPONSE: Defendant objects to the form of this request to admit as it is stated in the form of an interrogatory, is compound, and is confusing as written. Without waiving said objections, state that Defendant does not recall any such conversation with plaintiff on November 11, 2007. By way of further answer, state that the Missaukee County Jail is a non-narcotic facility, and to the extent that Plaintiff had narcotic prescription medications, these would not be allowed.

(docket # 184-1, ID# 1994). The disconnect in dates makes Martin's answer to this interrogatory unclear. Defendant Martin will be ordered to serve a supplemental response answering the interrogatory as it was posed by plaintiff regarding the date of November 28, 2007.

Interrogatory 5 was a question whether the jail's maximum security cells sometimes housed non-maximum security prisoners:

> 5.     Is it true that back-max and front-max, besides being used for maximum security prisoners, are used as punishment cells for prisoners who misbehave?
>
> RESPONSE: Defendant objects to the form of this request to admit, as it is stated in the form of an interrogatory. Defendant further objects to the term "punishment." Without waiving said objections, Defendant states that certain inmates housed at the Missaukee County Jail may be placed on administrative lock-down in the maximum security cells for various, legitimate purposes. It is further denied that the Missaukee County Jail maximum security cells are or can only be "used for maximum security prisoners" as the same is untrue.

(docket # 184-1, ID# 1994). Ignoring the posturing of the parties, Martin's response indicates that non-maximum security inmates were sometimes held in the jail's maximum security cells. Defendant's answer is adequate.

Andrea Martin will be ordered to supplement her response to request 8. The question posed and the response received are quoted verbatim below:

> 8.     Do you admit that when you ordered Plaintiff to move from B-cell to front max on 7/8/08, that you knew at that time that you would also be moving Richard Grass from a detox/observation cell/temporary housing cell into front-max also?
>
> RESPONSE: Defendant objects to the form of this request to admit as it assumes facts not in evidence. Defendant did not "move" inmate Richard Grass into a maximum security cell.

(docket # 184-1, ID# 1995). Plaintiff is correct that defendant's objection to request 8 on the ground that it "assumes facts not in evidence" is meritless. This trial objection has no place in discovery practice and is overruled. *See McGrath v. Cosco, Inc.*, No. 98-cv-1502, 1999 WL 269920, at * 1 (E.D. Pa. Apr. 21, 1999)("That an interrogatory assumes facts not in evidence is not a valid objection

in the context of discovery."); *see also Garcia v. Clark*, No. 1:10-cv-447, 2012 WL 1232315, at *
2 (E.D. Cal. Apr. 12, 2012)(objection overruled); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*,
Nos. 08-1250, 08-2392, 2012 WL 1080801, at * 5 (D. Kan. Mar. 29, 2012)(same). Further,
defendant's answer is ambiguous. Her placement of the word "move" in quotations suggests that
prisoner Grass was already housed in a "front-max" cell on 7/8/08. Other reasonable interpretations
of her response would be that Grass was never moved to such a cell, or that he was moved to a
"front-max" cell on a different date. Defendant will be ordered to supplement her response and
provide plaintiff with an unambiguous answer.

Plaintiff argues that defendant Martin's responses to requests 9, 10, 11, 12, and 13
were "evasive." Plaintiff alleged in his complaint that prisoner Richard Grass had a violent
reputation. For a period of time, plaintiff was housed in a front-max cell next to Grass. Plaintiff
alleges that Grass was locked in his cell 23 hours a day. Plaintiff states that he feared prisoner Grass.
(Am. Compl. ¶¶ 61-64). These allegations relate to plaintiff's claim that the cell assignments made
by defendant Martin violated his rights under the Due Process Clause. (Am. Compl. ¶ 83).

Request 9 was a relatively straightforward inquiry whether prisoner Grass "was
classified or considered a very high security risk." (docket # 184-1, ID# 1995). In addition to
objecting to the form of the question, defendant's attorney objected on the grounds that (1)
"defendant is uncertain what is meant by a 'very high security risk" and (2) the request "is not
calculated to lead to the discovery of admissible or relevant evidence." (*Id.*). Defendant's response
went on to state, "Without waiving said objections, [defendant] state[s] that it is neither admitted or

denied, as this Defendant is without sufficient information to form an answer. By way of further answer, state that the Missaukee County Jail maximum security cells may be used to house individuals who are not considered 'maximum security' inmates." (*Id.*). Counsel's answers and objections are double-speak. Defendant Martin will be ordered to answer plaintiff's question. Plaintiff asked whether prisoner Grass "was classified or considered a very high security risk." (docket # 184-1, ID# 1995).

Request 10 related to plaintiff's allegation that "Grass was deemed such a threat that he was locked in his cell 23 hours a day" (Am. Compl. ¶ 64):

10. Do you admit that Richard Grass was locked in his cell for 23 hours a day?

RESPONSE: Defendant objects to the form of this request to admit, and cannot answer as it is stated. Without waiving said objection[], state that if inmate Richard Grass was ever on administrative lock-down during his incarceration in the Missaukee County Jail, then it is admitted only that during such periods on lock-down, inmate Grass would have only been permitted out of his cell for approximately one hour per day.

(docket # 184-1, ID#s 1995-96). Defendant Martin will be ordered to file a response answering plaintiff's question whether "Richard Grass was locked in his cell 23 hours a day."

Martin's response to request 11 did not answer plaintiff's question:

11. Do you admit that the Plaintiff was locked in his cell each day for his own protection while Mr. Grass was let out of his cell for an hour to use the phone and shower?

RESPONSE: Defendant objects to the form of this request to admit, and cannot answer as stated. Defendant further objects to this request as it is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objections, state that if plaintiff was on administrative lock-down while in a maximum security cell, he would have only been permitted out of his cell for approximately one hour per day.

(docket # 184-1, ID# 1996).  Martin will be ordered to answer plaintiff's question whether "Plaintiff was locked in his cell each day for his own protection while Mr. Grass was let out of his cell for an hour to use the phone and shower."

Request 12 was an inquiry regarding which Missaukee County jail cells were "more" restrictive:

> 12.     Do you admit that, compared to A-cell, H-cell, F-cell or B-cell, that back-max, and especially front-max, are much more restrictive housing, i.e. less square feet and the physical ability to move around?
>
> RESPONSE: Defendant objects to the form of this request to admit as confusing. Defendant denies that Missaukee County Jail maximum security cells are "more restrictive" than other cells.  By way of further answer, state that the maximum security cells can be "more restrictive" to an inmate who is placed on administrative lock-down in one of the maximum security cells.

(docket # 184-1, ID# 1996).  Defendant gave an adequate response.  All jail cells are restrictive.  If plaintiff wanted a statement regarding the size of the jail's cells, he should have asked a less convoluted question and posed it as an interrogatory rather than as a request for an admission.

Request 13 inquired whether defendant Martin had a "policy, practice or custom" of placing prisoners in maximum security cells in response to misconducts:

> 13.     Do you admit that you had a policy, practice or custom, for the time period in question, of placing prisoners in "back-max" and "front-max" as punishment for misconducts?
>
> RESPONSE:  Defendant objects to the form of this request to admit, as it is state in the form of an interrogatory.  Defendant further objects to the use of the term "punishment."  Without waiving said objections, Defendant states that certain inmates housed at the Missaukee County Jail were placed on administrative lock down in the maximum security cells for various legitimate penological purposes.

(docket # 184-1, ID#s 1996-97). Martin's response is inadequate. Defendant will be ordered to answer plaintiff's question whether she had "a policy, practice or custom . . . of placing prisoners in 'back-max' and 'front-max' as punishment for misconducts[.]"

Request 16 asked for an admission of a policy, practice or custom of not "monitoring" of risks of serious harm:

> 16. Do you admit that you had, for the time period in question but not limited to, a policy practice or custom of forcing prisoners to withdraw from alcohol and/or drugs without being monitored for risks of serious harm?
>
> RESPONSE: Defendant objects to the form of this request to admit. To the extent that Plaintiff is requesting defendant to admit she has or had a policy, practice or custom of deliberate indifference to a prisoner's right to medical services or serious medical needs, it is denied as untrue.

(docket # 184-1, ID# 1997). Defendant's denial suffices as an answer under Rule 36(a)(4).


E.    <u>Hibblen, Wein, Bigger, Behl, Anderson, Yonkman, Wickstrom, Deruiter, and Mills</u>

On October 11, 2011, plaintiff served what he labeled as his "First Set of Combined Interrogatories and Request for Production of Documents, and First Set of Requests For Admissions" on defendants Hibblen, Wein, Bigger, Behl, Anderson, Yonkman, Wickstrom, Deruiter, and Mills. (docket # 109; *see* docket # 144 at 2, ¶ 5, ID# 1059). There are no outstanding discovery disputes regarding the defendants' responses to plaintiff's requests for production of documents or interrogatories. (*See* docket #s 118, 120). Plaintiff challenges the sufficiency of defendants' answers or objections to his requests for admissions. (docket # 144 at 8-15, ID#s 1065-72).

Under Rule 36(a)(3), defendants were required serve their answers or objection to plaintiff's requests "within 30 days after being served." FED. R. CIV. P. 36(a)(3). Because the requests were sent by mail, defendants had the benefit of the three additional days[3] provided by Rule 6(d). Thus, Monday, November 14, 2011, was defendants' deadline for their answers or objections to plaintiff's requests for admissions. Defendants served their written responses on November 22, 2011 (docket # 123; docket # 149 at 2, ¶ 8, ID# 1093), eight days after the responses were due.[4]

Defendants did not file a motion under Rule 36(b) to withdraw their admissions. The Sixth Circuit has held that a formal motion to withdraw admissions is not always required. *See Kerry Steel*, *Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153-54 (6th Cir. 1997). "[A] withdrawal 'may be imputed from a party's actions,' including the filing of a belated denial." *United States v. Petroff-Kline*, 557 F.3d 285, 293-94 (6th Cir. 2009). A district court has "considerable discretion" whether to permit withdrawal or amendment of admissions. *Kerry Steel*, 106 F.3d at 154. "The court's discretion must be exercised in light of Rule 36(b), which permits withdrawal (1) 'when the presentation of the merits of the action will be subserved thereby,' and (2) 'when the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'" *Kerry Steel*, 106 F.3d at 154. Here,

---

[3]Rule 6(d) states: "When a party must act within a specified time after service and service is made under Rule 5(b)(2)(C) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." FED. R. CIV. P. 6(d); *see Webb v. Green Tree Servicing, LLC*, No. ELH-11-2105, 2013 WL 5442423, at * 16 (D. Md. Sept. 30, 2013).

[4]If defendants had made a timely request for a 14-day extension of time to respond, the motion surely would have been granted. *See* FED. R. CIV. P. 36 (a)(3). But they again ignored the time limit established by the rules.

presentation of the merits of plaintiff's actions against these defendants will be served by allowing the withdrawal of the admissions. *See Clark v. Johnston*, 413 F. App'x 804, 818 (6th Cir. 2011).

Plaintiff has the burden of demonstrating that he would be prejudiced by allowing defendants to withdraw the admissions. *See Kerry Steel*, 106 F.3d at 154; *see also Riley v. Kurtz*, 1999 WL 801560, at * 3; *Chancelor v. City of Detroit*, 454 F. Supp. 2d 645, 666-67 (E.D. Mich. 2006). "The prejudice contemplated by [Rule 36(b)] is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth." *Kerry Steel*, 106 F.3d at 154 (quoting *Brook Village North Assoc. v. General Elec. Co.*, 686 F.2d 66, 70 (1st Cir.1982))." "Prejudice under Rule 36(b), rather, 'relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Kerry Steel*, 106 F.3d at 154 (quoting *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991)). Plaintiff attempted to use requests for admissions as a general discovery device. His reliance, if any, on defendants' admissions, was minimal. Plaintiff has not and cannot show on the present record the type of prejudice required by the rule. Accordingly, all the admissions of defendants Hibblen, Wein, Bigger, Behl, Anderson, Yonkman, Wickstrom, Deruiter, and Mills stemming their filing of responses eight days after they were due are hereby withdrawn.

Under Rule 36(a)(6) a party may move to determine the sufficiency of an answer or objection." FED. R. CIV. P. 36(a)(6). Plaintiff argues that many of the defendants' answers and objections to his requests for admissions were deficient. (docket # 144 at 8-15, ID#s 1065-72).

-18-

(1). Hibblen

Plaintiff alleges that Corrections Officer Darcy Hibblen violated his rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II). (*See* Am. Compl. ¶¶ 88, 98, ID#s 338, 345-46). Plaintiff argues that defendant Hibblen's responses to his requests 2, 3, 4, and 7 were deficient. (docket # 144 at 8, ID# 1065).

Request 2 and Hibblen's response are set forth verbatim below:

2. Admit that you delivered oral and written medical requests from the plaintiff to Lt. Martin during the time period in question.

RESPONSE: Defendant objects to this request as vague and ambiguous, as there are no specific medical requests referenced. Without waiving said objection, state that any medical request made by an inmate that was received by this Defendant would have been responded to and considered pursuant to Missaukee County Sheriff's Department Policy and Procedure.

(docket # 184-1, ID# 2000). Defendant Hibblen's answer to request 2 was inadequate. A qualification based on the request's lack of specificity was appropriate. Further, the "period in question" is ambiguous because it is unclear whether plaintiff is referring to the period in which he alleges he experienced narcotic withdrawal immediately after his arrest on November 26, 2007 (Am. Compl. ¶¶ 22-32, ID#s 311-14), the period after December 9, 2007 when he allegedly "broke a restored tooth on a piece of meat gristle while trying to masticate his food" (Am. Compl. ¶¶ 33-42, ID#s 314-17), or plaintiff's entire period of confinement at the jail,[5] November 26, 2007, to October

---

[5]Plaintiff argues that his references to "the time in question" or "the time period in question" were not ambiguous because he had defined these terms in the definition section of his requests for admissions as "the dates of November 26, 2007 [] through October 7, 2008." (docket # 144 at 8, ID# 1065). Plaintiff neglected to support his argument with a copy of the definitions.

7, 2008.  (*See* Am. Compl. ¶ 21, ID# 311).  Hibblen's answer was not an admission, denial, or a

statement "stat[ing] in detail why the answering party [could not] truthfully admit or deny it."  FED.

R. CIV. P. 36(a)(4).  Rule 36(a)(4) states: "The answering party may assert lack of knowledge or

information as a reason for failing to admit or deny only if the party states that it has made a

reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable

it to admit or deny."  *See*  FED. R. CIV. P. 36(a)(4).  Defendant Hibblen will be ordered to file a

supplemental answer to this request.  *See* FED. R. CIV. P. 36(a)(6).

Request 3 is confusing, because rather than requesting an admission that Dr. Ureta

usually came to the jail on Wednesdays, plaintiff added the alternative "or another day of the week."

> 3.      Admit that Dr. Ureta usually came to the jail to see and/or treat prisoners on
> Wednesdays, or another day of the week, during the time period in question.
>
> RESPONSE:  Defendant objects to the request as vague and ambiguous with regard to "the
> time period in question."  Without waiving said objection, admitted only that there was a
> period of time when Dr. Ureta would come to the jail on Wednesdays, but this Defendant can
> neither admit nor deny that it was during Plaintiff's incarceration.

(docket # 184-1, ID# 2000).  Hibblen's response to request 3 is adequate, given the confusing nature

of the request.  An admission would establish virtually nothing.

Request 4 asks for an admission that Hibblen never brought plaintiff from his cell to

see any health care professional:

> 4.      Admit that you never brought the plaintiff from his cell to see Dr. Ureta, or any other
> Health Care Professional (HCP), during the time period in question.
>
> RESPONSE:  Defendant objects to the term "health care professional" as vague.  Further,
> Defendant objects to the request as ambiguous as to the "time period in question."  Without
> waiving said objection, admitted.

(docket # 184-1, ID# 2000).  The time period is vague for the reasons previously stated.  Defendant

offers no explanation how "health care professional" is ambiguous.  In any event, defendant's

admission is sufficient.  FED. R. CIV. P. 36(a)(4).  No further response is required.

Request 7 asked for an admission that other prisoners were taken from their jail cells

to see  Dr. Ureta or other health care professionals:

> 7.    Admit that during the time period in question you brought some other prisoners, who
> claimed to have medical needs, from their cells and presented them to Dr. Ureta or
> other HCP.
>
> RESPONSE:  Defendant objects to the request as vague and ambiguous with regard to "the
> time period in question."  Without waiving said objection, admit that this Defendant would
> sometimes transport inmates from their cells to see Dr. Ureta when he was at the jail.

(docket # 184-1, ID# 2000).  Defendant's admission that she would sometimes transport inmates

from their cells to see Dr. Ureta when he was at the jail was an adequate answer. FED. R. CIV. P.

36(a)(4).

### (2).    Wein

Plaintiff alleges that Corrections Officer Eric Wein violated his rights under the

Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and

Unusual Punishments Clause (Count II).  (*See* Am. Compl. ¶¶ 85, 95, ID#s 338, 345).  Plaintiff

argues that defendant Wein's responses to request for admissions 2, 3, 9, 10, 11, 12, 13, and 14 were

deficient.  (docket # 144 at 9, ID#s 1065-66).

Request 2 sought an admission with regard to plaintiff's medication:

2.  Admit that you knew on 11/29/2007, that the plaintiff had not been receiving his medications at the jail.

RESPONSE: Defendant objects to the form of this request as vague and ambiguous, as it does not define the term "medications" and assumes this Defendant knew what Plaintiff's "medications" were, if any. Without waiving said objection, denied as the same is untrue. By way of further answer state Plaintiff was receiving over-the-counter pain medications.

(docket # 184-1, ID# 2003). Defendant's denial was an appropriate answer to plaintiff's request for

an admission. *See* FED. R. CIV. P. 36(a)(4).

Request 3 sought an admission regarding the statement plaintiff gave on November

30, 2007:

3.  Admit that Sheriff Bosscher, Lt. Martin and yourself deliberately deprived the plaintiff of his medication, and medical attention, in part to make him vulnerable to questioning at the time of your interrogation on 11/30/2007.

RESPONSE: Defendant objects to the form of this request as vague and ambiguous, as it does not define the term "medications" and assumes this Defendant knew what Plaintiff's "medications" were, if any. Further, Defendant objects to the use of the term "interrogation," as it assumes this event actually occurred. Without waiving said objection, denied as the same is untrue. By way of further answer state Plaintiff was receiving over-the-counter pain medications.

(docket # 184-1, ID# 2003). Defendant's denial was an appropriate answer to plaintiff's request for

an admission.

Request 9 was of the same ilk as request 3:

9.  Admit that despite knowing that the plaintiff was claiming serious medical needs, that you went ahead with your planned interrogation.

RESPONSE: Defendant objects to the use of the term "interrogation," as it assumes this event actually occurred. Without waiving said objection, denied as the same is untrue. By way of further answer state Plaintiff was receiving over-the-counter pain medications.

(docket # 184-1, ID# 2004). Defendant's denial was an appropriate answer to plaintiff's request for

an admission.

Request 10 took a slightly different tack in attempting to undermine plaintiff's

statement:

10.     Admit that you knew that the plaintiff had a right to have his attorney present when
        you conducted the interrogation of the plaintiff on 11/30/2007.

RESPONSE: Defendant objects to the form of this request as vague and ambiguous, as it
does not define the term "medications" and assumes this Defendant knew what Plaintiff's
"medications" were, if any. Further, Defendant objects to the use of the term
"interrogation,"as it assumes this event actually occurred. Without waiving said objection,
denied as the same is untrue. By way of further answer state Plaintiff was receiving
over-the-counter pain medications.

(docket # 184-1, ID# 2004). Defendant's denial was an appropriate answer to plaintiff's request for

an admission.

Requests 11, 12, 13, and 14 are set forth verbatim below:

11.     Admit that you had been educated and/or trained to know that the plaintiff had the
        right to have his attorney present when you conducted the interrogation of the
        plaintiff on 11/30/2007.

12.     Admit that you knew that Miranda waiver did not waive right to have counsel present
        during interrogation to prisoner who had counsel.

13.     Admit that you had carried out several other interrogations of prisoners without their
        counsel being present when you knew they had counsel.

14.     Admit that the Sheriff had a policy or custom of interrogating prisoners who had
        counsel without their counsel being present.

Defendant Wein gave identical responses to these requests:

RESPONSE: Defendant objects to the form of this request as it assumes facts not in evidence, and to the use of the term "interrogation," as it assumes this event actually occurred. Without waiving said objection, Defendant cannot answer the request as stated, as it is based on an event which did not occur.

(docket # 184-1, ID#s 2004-05). Defendant's objections that the requests "assume[d] facts not in evidence" are overruled. *See McGrath v. Cosco*, 1999 WL 269920, at * 1. Officer Wein denies that plaintiff and other prisoners were interrogated when they had counsel and had not waived the right to counsel. In addition, no further answers are required because all plaintiff's claims attempting to undermine his criminal convictions through this civil lawsuit were dismissed. (05/03/11 Order, docket # 68).

(3).     Bigger

Plaintiff alleges that Corrections Officer Kenneth Bigger violated his rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II). (*See* Am. Compl. ¶¶ 88, 98, ID#s 338, 345-46). Plaintiff argues that Bigger's responses to requests 5, 6, 8, 12, and 13 were deficient. (docket # 144 at 9-10, ID#s 1066-67).

Request 5 asked Officer Bigger to admit that he had made a statement:

5.     Admit that you stated to the plaintiff and the E.M.T. persons, "Well, he is on the list to see Dr. Ureta next week."

RESPONSE:  Defendant objects to the form of this request to admit as vague and ambiguous, as it does not reference a specific time, and with regard to the underlined word "is".  Without waiving said objections, denied as the same is untrue.

-24-

(docket # 184-2, ID# 2009). Defendant's denial was an appropriate answer to plaintiff's request for an admission.

Request 6 sought an admission that Officer Bigger "returned" plaintiff to a cell:

6. Admit that you then returned the plaintiff to a cell in the "back-max" area of the jail.

RESPONSE: Defendant objects to the form of this request to admit as vague and ambiguous, as it does not reference a specific time. Without waiving said objections state that if Plaintiff was assigned to the "back-max" cell, and this Defendant had ever taken Plaintiff out of that cell, then this Defendant would have returned Plaintiff to that cell.

(docket # 184-2, ID# 2009). Request 6 is so vague that the court will not order any further response.

Request 8 sought an admission regarding plaintiff being on a list to see a health care provider:

8. Admit that the plaintiff was not on any list to see Dr. Ureta or any other health care provider for the next week.

RESPONSE: Defendant objects to the form of this request to admit as vague and ambiguous, as it does not reference a specific time. Without waiving said objection, neither admitted nor denied as this Defendant does not have sufficient information to form a belief as to the truth of the matter, nor does this Defendant know to what "list" Plaintiff may be referring.

(docket # 184-2, ID# 2009). Request 8 is so vague that the court will not order any further response.

Request 12 sought an admission regarding Bigger's response to plaintiff's pain:

12. Admit that you did nothing more to help the plaintiff alleviate his pain.

RESPONSE: Defendant objects to the form of this request, as it assumes this Defendant was aware of pain or a serious medical need that Plaintiff actually suffered. Without waiving said objections, denied as the same is untrue. By way of further answer, state that Plaintiff was provided a second mat, and Plaintiff was provided his medications and over-the-counter pain medications.

-25-

(docket # 184-2, ID# 2010).  Defendant's denial was an appropriate answer to plaintiff's request for an admission.

Request 13 sought an admission that Officer Bigger had not scheduled plaintiff for an examination by a health care provider:

> 13.    Admit that after the time referred to in paragraphs 9-12 that you did not at any time schedule the plaintiff to be seen by any health care professional.
>
> RESPONSE:  Defendant objects to the form of this request as vague and ambiguous as to the term "health care professional."  Without waiving said objection, admitted.  By way of further answer, state that Plaintiff was being provided medications and a second mat as prescribed by Dr. Ureta, as well as over-the-counter medications as necessary.

(docket # 184-2, ID# 2010).  Defendant's admission was an appropriate answer.

### (4).    Behl

Plaintiff alleges that Corrections Officer Jason Behl violated his rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II).  (*See* Am. Compl. ¶¶ 88, 98, ID#s 338, 345-46).  Plaintiff argues that Behl's responses to requests 2, 3, 4, and 7 were deficient.  (docket #s 144 at 10-11, ID#s 1067-68).  Requests 2, 3, 4, and 7 and the associated responses are identical to the requests and responses discussed in connection with defendant Hibblen.  (docket # 184-2, ID# 2013).  For the reasons previously stated herein, defendant Behl will be ordered to serve supplemental answers to request 2.

(5).     Anderson

Plaintiff alleges that Corrections Officer Julie Anderson violated his rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II). (*See* Am. Compl. ¶¶ 88, 98, ID#s 338, 345-46). Plaintiff argues that defendant Anderson's responses to requests 2, 3, 4, and 7 were deficient. (docket # 144 at 11, ID# 1068). The requests and responses at issue are identical to those addressed in connection with defendants Hibblen and Behl. (docket # 184-2, ID#s 2016-17). For the reasons previously stated, defendant Anderson will be ordered to serve supplemental answers to request 2.

(6).     Yonkman

Plaintiff alleges that Corrections Officer Carol Yonkman violated his rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II). (*See* Am. Compl. ¶¶ 86, 96, ID#s 338, 345). Plaintiff argues that Yonkman's responses to requests 1, 3, 6, 7, 8 were deficient. (docket # 144 at 12, ID#s 1069-70).

Request 1 sought an admission that Officer Yonkman was aware that plaintiff was housed in the "back-max" area of the jail:

1.      Admit that beginning on 11/27/2007, you became aware that the plaintiff was being housed in the "back-max" area of the MCJ.

RESPONSE: Defendant admits only that at some point during Plaintiff's incarceration, she was aware that he was in the "back-max" area, but does not recall the specific date she became aware of that information. By way of further information, state that Plaintiff did not stay in the "back-max" cell during his entire incarceration at the Missaukee County Jail.

(docket # 182-2, ID#s 2018-19). Defendant Yonkman's response is adequate under Rule 36(a)(4). She admits that she was aware that plaintiff was housed in the back-max area, but she does not recall the specific date.

Request 3 asks for an admission that Yonkman relayed a medical request to Lieutenant Martin:

> 3.     Admit that you passed on this medical request to Lt. Martin.
>
> RESPONSE: Defendant objects to this request as vague and ambiguous, as there is no medical request referenced. Without waiving said objection, state that any medical request made by an inmate that was received by this Defendant would have been responded to and considered pursuant to Missaukee County Sheriff's Department Policy and Procedure.

(docket # 184-2, ID# 2019). Request 3 is so vague that the court will not order any further response.

Request 6 sought an admission that Dr. Ureta usually came to the jail on Wednesdays to treat prisoners:

> 6.     Admit that Dr. Ureta usually came to the jail to see and/or treat prisoners on Wednesdays, during the time period in question.
>
> RESPONSE: Defendant objects to the request as vague and ambiguous with regard to "the time period in question." Without waiving said objection, admitted only that there was a period of time when Dr. Ureta would come to the jail on Wednesdays, but this Defendant can neither admit nor deny that it was during Plaintiff's incarceration.

(docket # 184-2, ID# 2019). The answer is adequate.

Request 7 sought an admission regarding taking plaintiff from his cell to see health care providers:

> 7.     Admit that you never brought the plaintiff from his cell to see Dr. Ureta, or any other Health Care Professional (HCP) during the time period in question.

RESPONSE: Defendant objects to the request as vague and ambiguous with regard to "the time period in question." Defendant objects to the term "health care professional" as vague. Without waiving said objection, this Defendant does not recall transporting Plaintiff to see Dr. Ureta.

(docket # 184-2, ID# 2019-20). Defendant Yonkman's response is adequate under Rule 36(a)(4).

Request 8 sought an admission regarding taking other prisoners to see health care professionals:

> 8.      Admit that during the time period in question you brought some other prisoners, who claimed to have medical needs, from their cells and presented them to Dr. Ureta or other HCP.
>
> RESPONSE: Defendant objects to the request as vague and ambiguous with regard to "the time period in question." Without waiving said objection, admit that this Defendant would sometimes transport inmates from their cells to see Dr. Ureta when he was at the jail.

(docket # 184-2, ID#s 2020). Defendant's admission that she would sometimes transport inmates from their cells to see Dr. Ureta was an adequate response. FED. R. CIV. P. 36(a)(4).

(7).      Wickstrom

Plaintiff alleges that Corrections Officer Eric Wickstrom violated his rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II). (*See* Am. Compl. ¶¶ 87, 97, ID#s 338, 345). Plaintiff argues that Wickstrom's responses to requests 9, 11, 20, 21, and 22 were deficient. (docket # 144 at 13-14, ID#s 1070-71).

Request 9 sought an admission that Wickstrom was not aware of any occasion when Lieutenant Martin came to the "back-max" area to personally discuss and/or evaluate plaintiff's medical needs:

9.	Admit that when you delivered these medical requests to Lt. Martin, that Lt. Martin at no time that you are aware of, came to the back-max area to personally discuss and/or evaluate the plaintiffs [sic] medical needs.

RESPONSE: Defendant objects to this request as vague and ambiguous. Without waiving said objection, state that any medical requests or complaints made by an inmate that were received by this Defendant would have been responded to and considered pursuant to Missaukee County Sheriff's Department Policy and Procedure.

(docket # 184-2, ID# 2024). Defendant Wickstrom's answer to request 9 is inadequate and evasive.

It is not an admission, denial, or statement "stat[ing] in detail why the answering party [could not]

truthfully admit or deny it." FED. R. CIV. P. 36(a)(4).

Request 11 sought an admission from defendant Wickstrom regarding grievances:

11.	Admit that you provided at least several grievance forms to the plaintiff during the time period in question.

RESPONSE: Defendant objects to this request as vague and ambiguous. Without waiving said objection, admitted.

(docket # 184-2, ID# 2024). Defendant's admission was an appropriate answer.

Request 20 sought an admission regarding plaintiff's complaints of severe back pain:

20.	Admit that the plaintiff consistently complained of having continuous severe back pain during the time period in question.

RESPONSE: Defendant objects to this request as vague and ambiguous. Without waiving said objection, denied as the same is untrue.

(docket # 184-2, ID# 2025). Defendant's denial was an appropriate answer to plaintiff's request for

an admission.

Request 21 sought an admission regarding taking other prisoners to see health care

professionals:

-30-

21.     Admit that during the time period in question, you brought some other prisoners with claimed medical needs from their cells to be seen by Dr. Ureta or other Health Care Professional (HCP).

RESPONSE: Defendant objects to the request as vague and ambiguous with regard to "the time period in question." Without waiving said objection, admit that this Defendant would sometimes transport inmates from their cells to see Dr. Ureta when he was at the jail.

(docket # 184-2, ID#s 2025). Defendant's admission that he would sometimes transport inmates from their cells to see Dr. Ureta when he was at the jail was an adequate response. FED. R. CIV. P. 36(a)(4).

Request 22 sought an admission regarding escorting plaintiff from his cell to see a health care professional:

22.     Admit that you never brought the plaintiff from his cell to be seen by Dr. Ureta or any other HCP during the time in question.

RESPONSE: Defendant objects to the request as vague and ambiguous with regard to "the time period in question." Defendant objects to the term "health care professional" as vague. Without waiving said objection, this Defendant does not recall transporting Plaintiff to see Dr. Ureta.

(docket # 184-2, ID#s 2025-26). Defendant's Wickstrom's answer is adequate under Rule 36(a)(4).

(8).     Deruiter

Plaintiff alleges that Dispatch Sergeant David Deruiter violated his rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Eighth Amendment's Cruel and Unusual Punishments Clause (Count II). (*See* Am. Compl. ¶¶ 84, 96, ID#s 337, 344). Plaintiff argues that Deruiter's responses to requests 9 and 15 were deficient. (docket # 144 at 14, ID# 1071).

Request 9 sought an admission regarding plaintiff's cell assignment:

9.     Admit that in your professional opinion, that the plaintiff should have been placed in one of the "detox cells" for observation.

RESPONSE:  Defendant objects to the form of this request as it assumes only certain cells are subject to or open for observation.  Without waiving said objection, denied as the same is untrue.

(docket # 184-3, ID# 2029).  Defendant's denial was an appropriate answer.

Request 15 sought an admission regarding plaintiff's medical/dental complaints:

15.     Admit that in January 2008, you told the plaintiff that you had advised Lt. Martin of plaintiffs [sic] medical/dental complaints several times.

RESPONSE:  Defendant objects to this request as vague and ambiguous.  Without waiving said objection, state that any medical requests or complaints made by an inmate that were received by this Defendant would have been responded to and considered pursuant to Missaukee County Sheriff's Department Policy and Procedure.

(docket # 184-3, ID# 2030).  Defendant Deruiter's response to request 15 is inadequate and evasive.

It is not an admission, denial, or statement "stat[ing] in detail why the answering party [could not]

truthfully admit or deny it."  FED. R. CIV. P. 36(a)(4).

(9).    Mills

Plaintiff alleges that Corrections Officer Stefanie Mills violated his rights under the

Fourteenth Amendment's Due Process Clause (Count I).  (*See* Am. Compl. ¶ 88, ID#s 338-39).

Plaintiff argues that Mills's responses to requests  2, 3, 5, and 7 were deficient (docket # 144 at 14-

15, ID#s 1071-72).  Requests 2, 3, and 7 are the same requests 2, 3, and 7 served on defendants

Hibblen, Behl, and Anderson.  For the reasons previously stated herein, defendant Mills will be

ordered to serve a supplemental response to request 2.

Request 5 sought an admission that plaintiff usually requested to be returned to his cell early:

> 5.    Admit that when the plaintiff would take his "walks" in the library while being housed in "front-max," he would usually request to be returned to his cell early.
>
> RESPONSE: Defendant objects to this request as vague and ambiguous. Without waiving said objections, neither admitted nor denied as to why Plaintiff may have requested to be returned to his cell.

(docket # 184-3, ID# 2033). Defendant Mills did not fairly respond to the substance of this request. *See* FED. R. CIV. P. 36(a)(4). Plaintiff sought confirmation that he usually made the request, not an admission as to why plaintiff made it. Defendant Mills will be ordered to serve a supplemental answer to request 5.

## III.    Requests for Production of Documents

Plaintiff argues that defendants Missaukee County, Bosscher, and Martin waived their objections to his requests for production of documents because their responses to his requests for production of documents were untimely. (docket 144 at 2, ¶ 3, ID# 1059). On August 11, 2011, plaintiff served a request for production of documents on defendants Missaukee County, Bosscher, and Martin. Defendants were required "to respond in writing within 30 days after being served." FED. R. CIV. P. 34(b)(2)(A). Because the requests were sent by mail, defendants had the benefit of the three additional days provided by Fed. R. Civ. P. 6(d). Thus, September 13, 2011, was the deadline for defendants' written responses to plaintiff's requests for production of documents. Defendants served their written responses on October 31, 2011 (docket # 118; docket # 149 at 2, ¶ 4, ID# 1092), more than a month after the responses were due.

"As a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 constitutes a waiver of any objection." *Carfagno v. Jackson National Life Ins. Co.*, No. 5:99-cv-118, 2001 WL 34059032, at * 1 (W.D. Mich. Feb. 13, 2001) (collecting cases). Defendants offer no explanation for their untimely responses. The "argument" in defendants' brief consists of the following sentence: "To the extent Plaintiff is claiming any prejudice by any delay, it is denied as untrue." (docket # 149 at 2, ID# 1092). Defendants have not presented any developed argument and cite no supporting legal authority. "If the time limits set forth in the discovery rules are to have any meaning, waiver is a necessary consequence of dilatory action in most cases." *Carfagno*, 2001 WL 34059032, at * 1 (collecting cases). The rule applies with equal force to all objections, including claims of privilege. *Id.* at 2. Defendants Missaukee County, Bosscher, and Martin have generally waived their objections to plaintiff's requests for production of documents. However, it is well established that the court retains discretion to decline to compel production where the request far exceeds the bounds of fair discovery. *Id.* at 2; *see also Wilson v. Kautex*, No. 07-60, 2008 WL 162645, at * 4 (N.D. Ind. Jan. 14, 2008).

A.      <u>Missaukee County</u>

Plaintiff asks the court to compel Missaukee County to produce documents in response to requests for production 3, 4, 5, 6, 8, 9, 12, 13, and 14. (docket # 144 at 15-17, ID#s 1072-74).

Request 3 seeks production of documents Missaukee County "relied upon" in hiring Andrea Martin:

3. Provide any notes that the county has on file, and any other information relied upon, regarding the hiring of Andrea Martin as the Jail Administrator

RESPONSE: Defendant objects to the production of any records contained in defendant Martin's personnel file.

(docket # 184-3, ID # 2036). Plaintiff alleged that Missaukee County "failed to adequately train its subordinates" regarding a pretrial detainee's rights to health care and rights regarding punishment (Am. Compl. ¶¶ 79 (A), (B), ID# 332) and "[i]n hiring unqualified people or in failing to adequately train MCJ staff, in having non-medically trained persons determining which prisoners would be allowed to see the doctor and which would not." (Am. Compl. ¶ 89(A), ID# 339). Plaintiff argues that this information is "relevant" and "necessary" to his "claim of failure to train." (docket # 144, at 15, ID# 1072). Defendant offers no coherent response. (docket # 149). Plaintiff did not request production of Martin's personnel file. The court will not order production of Martin's personnel file, because such files contain confidential information that could easily be abused. *See Heard v. Caruso*, No. 2:05-cv-231, 2010 WL 1856477, at * 2 (W.D. Mich. May 10, 2010); *see also Ruffino v. Faucher*, No. 3:11-cv-297, 2012 WL 3637636, at * 1-2 (D. Conn. Aug. 22, 2012). Defendant will be ordered to produce any document(s) in its possession, custody, or control, setting forth the educational, experience, and training required for an individual to be hired as the Missaukee County jail administrator as of the date defendant Martin was hired by the County for that position.

Request 4 asked for production of policies regarding "the provision of dental services" at the jail:

4. Provide a copy of all MCL's, policies, regulations or instructions regarding the provision of dental services at the MCJ.

> RESPONSE: Defendant requests to this request as vague, as Defendant is uncertain what is meant by the term "MCL's". To the extent that "MCL's" is meant to refer to the Michigan Compiled Laws, Defendant objects as it is not required to provide Plaintiff with copies of legal materials. Without waiving said objections, state that such records are attached to defendant Bosscher's responses to Plaintiff's request for production.

(docket # 184-3, ID# 2036). Plaintiff argues that "defendant know[s] full well what an MCL is, and [] refused to provide any state law basis for any defense." (docket # 144 at 15, ID # 1072). It is difficult to determine whether plaintiff or defendant is being more ridiculous. There are no state law claims at issue in this lawsuit. Defendant certainly knew what plaintiff was requesting when he asked for "MCL's." On the other hand, plaintiff apparently wanted defendant to do legal research for him and provide him with free copies of provisions of Michigan Compiled Laws. Defendant had no obligation to provide plaintiff with copies of legal materials. Plaintiff is required to shoulder the burden of his own research. Plaintiff has been out of prison for more than a year and has had more than enough time to conduct his legal research. Defendant produced documents in response to plaintiff's request, and plaintiff has not shown any deficiency in the document production. No further response is required.

Request 5 sought production of policies regarding the obligation of jail inmates to pay for dental services:

> 5.     Provide an MCL's [sic] policies, regulations, or instructions, or any other documentation to verify that MCJ prisoners must submit money in advance before they will be allowed emergent dental services.

> RESPONSE: Defendant objects to this request as vague, as Defendant is uncertain what is meant by the term "MCL's". To the extent that "MCL's" is meant to refer to the Michigan Compiled Laws, Defendant objects and is not required to provide Plaintiff with copies of legal materials. Without waiving said objections, state that such records are attached to Defendant Bosscher's responses to Plaintiff's requests for production.

(docket # 184-3, ID# 2036). No further response is required for the reasons stated in the previous paragraph.

Request 6 was a request for documents regarding the training and educational requirements of EMT workers:

> 6. Provide a copy of the training and educational requirements regarding the hiring of E.M.T. workers.
>
> RESPONSE: Defendant objects to this request as vague and ambiguous. Without waiving said objections, state that no such documents exist, and Defendant is not required to create documents in response to Plaintiff's request.

(docket # 184-3, ID# 2037). Plaintiff argues: "[T]he question asked is clear, what are the educational and training requirements required before a person may be qualified for hiring as a Missaukee County EMT." (docket # 144 at 16, ID# 1073). Defendant has stated that no such documents exist. No further response is required.

Request 8 asks for production of documents stating the specific requirements for an individual to be qualified to act in the position of jail administrator:

> 8. Provide a copy of Missaukee County's specific requirements for an individual (Andrea Martin) to be qualified to act in the position of MCJ Jail Administrator.
>
> RESPONSE: Defendant objects to this request as vague and ambiguous. Without waiving said objections, state that no such documents exist, and Defendant is not required to create documents in response to Plaintiff's request.

(docket # 184-3, ID# 2037). Defendant's answer that "no such documents exist" is unambiguous and no further response is required.

Request 9 is a request for production of documents regarding other lawsuits:

-37-

9.     Has the County ever been named as a co-defendant in [] a criminal or civil lawsuit with Sheriff James Bosscher or Jail Administrator Andrea Martin at any time during James Bosscher's term(s) as the Missaukee County Sheriff?  If so, for each lawsuit, state the name of the lawsuit, the date of filing, the case number, if there was a trial and the ultimate disposition of the case, including any liability found, and judgment or sentence imposed.

RESPONSE:  Defendant objects to this request as overbroad, and not calculated to lead to the discovery of admissible evidence.  Without waiving said objections, state . . .

(docket # 184-3, ID# 2037).  Plaintiff argues, "the response ends, without answering or providing [] the information requested. . . . [T]he question/production was not answered." (docket # 144 at 16, ID# 1073).  This is a multi-part interrogatory presented as if it were a request for production of documents in an apparent attempt to avoid interrogatory limits set by the case management order.[6] The court will not compel any answer to this interrogatory.

Request 12 asked for specific monthly or annual reports submitted by the sheriff or jail administrator:

12.    Provide a copy of, for the time period in question, any reports or other documents that are submitted by the Sheriff or Jail Administrator for review by County Official's [sic] concerning (monthly or annually) maintenance of the jail, and medical/dental treatment of prisoners, and concerning discipline and/or housing of prisoners.

RESPONSE:  Defendant objects to this request as vague and ambiguous.  Without waiving said objections, state that no such documents exist, and Defendant is not required to create documents in response to Plaintiff's request.

(docket # 184-3, ID# 2038).  Defendant's response that no such documents exist is unambiguous.

Defendant cannot be ordered to produce documents which do not exist.  *See  Evans v. Lehner*, No.

---

[6]Plaintiff later exceeded the case management order's limits on the number of interrogatories. (*See* Op. at 7, docket # 214).

1:11-cv-581, 2013 WL 5273008, at * 1 (W.D. Mich. Sept. 18, 2013) *Hunley v. Glencore Ltd., Inc.*,

No. 3:10-cv-455, 2013 WL 4787187, at * 3 (E.D. Tenn. Sept. 6, 2013); *Ross v. Warden Ross Corr.*

*Inst.*, No. 2:10-cv-822, 2011 WL 1877706, at * 5 (S.D. Ohio May 16, 2011).

Request 13 sought other documents submitted to the County:

13.     Produce copies of all records for the years 2007-2008, which were submitted to the County showing how many MCJ misconduct reports have been written for a given period, and the findings, etc., of those reports, and all associated documents submitted for review.

RESPONSE:  Defendant objects to this request as vague and ambiguous.  Without waiving said objections, state that no such documents exist, and Defendant is not required to create documents in response to Plaintiff's request.

(docket # 184-3, ID# 2038).  Defendant's response that no such documents exist is unambiguous.

Defendant cannot be ordered to produce documents which do not exist.

Request 14 asked for certain "medical record" documents:

14.     Produce a copy of all medical record documents for the years 2007-2008, which are submitted to the County for review of, but not limited to, how many prisoners have seen Dr. Ureta or other health care professionals in a given period, the diagnosis, and the treatments provided.

RESPONSE:  Defendant objects to this request as overbroad, unduly burdensome, as well as requesting medical information protected by privilege and statute, including the Health Insurance Portability and Accountability Act.  Defendant will not produce medical records or other medical information relating to individuals other than Plaintiff.

(docket # 184-3, ID# 2038-39).  This is another interrogatory mischaracterized as a request for

production of documents.  The court will not order any response to this interrogatory.

B.      Bosscher

Plaintiff asks the court to compel defendant Bosscher to produce documents in response to requests for production 1, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 21.  (docket # 144 at 18-22, ID#s 1075-79).

Plaintiff's request 1 to defendant Bosscher asked for a copy of the jail's rules:

1.      Provide a copy of the Missaukee County Jail's (MCJ) posed rules for the time period in question (11/26/07 - 10/-7-08), that were signed by the previous circuit Court Judge Corwin.

RESPONSE:  Attached as Exhibit 1.

(docket # 184-3, ID# 2044).  Plaintiff argues that "the provided rules are not the same as the plaintiff remembers them to be."  (docket # 144 at 19, ID# 1076).  Defendant did what the Federal Rules of Civil Procedure require.  He produced a copy of the rules which were responsive to plaintiff's request.  Defendant was not required to produce rules corresponding to plaintiff's memory of the jail's rules.

Request 6 was a multi-part interrogatory:

6.      Provide any and all criteria regarding the training of Missaukee County Correctional Officers, and separately for the training of Missaukee County Sheriff Deputies, for the time period in question.  This includes both state and local training.  This includes any and all criteria for hiring.  If this involves certifications, be specific as to the accomplishments necessary to achieve these.  If college is necessary, disclose any and all pre-requisite courses necessary for hire.  Include any required state or county physical training.

RESPONSE:  Defendant objects to this request as overbroad and not calculated to lead to the discovery of admissible evidence.  Further, Defendant is not in possession of all training materials provided to the individual Defendant officers.  Further, Defendant is not required to create documents in response to Plaintiff's request.

(docket # 184-3, ID# 2045). The court will not order any response to this interrogatory.

Request 7 was an interrogatory seeking "all information relied on regarding each defendant" at the time of hiring:

> 7. Provide all information relied on regarding each defendant, i.e. training achievements and education, at the time of hiring each as a Missaukee County Corrections Officer or Sheriff's Deputy.
>
> RESPONSE: Defendant objects to this request as vague and overbroad. Defendant does not know what "information" was "relied on regarding each defendant ... at the time of hiring each". With regard to the individually named Defendants, objection is made to the production of items contained within their personnel files as such information is private and not subject to disclosure. Without waiving said objections, state that each individually named Defendant Missaukee County Sheriff's Deputy was hired based on his or her qualifications, education and prior experiences, consistent with state requirements for corrections officers.

(docket # 184-3, ID# 2045). The court will not order any answer to this interrogatory that plaintiff mischaracterized as a request for production of documents.

Request 8 asked for copies of any grievance filed from January 1, 2005, to the present which alleged that any named defendant denied or provided inadequate medical attention:

> 8. Provide a copy of any grievances submitted, from 1/1/2005, to the present time, alleging denial of medical attention, or alleging inadequate medical attention, regarding Dr. Ureta, Jail Administrator/C/O Martin, or any other named defendant in this matter. (Identities may be blacked out if required by law).
>
> RESPONSE: Defendant will not provide information protected from disclosure pursuant to law, including but not limited to medical information protected by the Health Insurance Portability and Accountability Act. Without waiving said objections, state that all of Plaintiff's medical information and requests are attached as Exhibit 4.

(docket # 184-3, ID#s 2045-46). Plaintiff asked for copies of "grievances," not medical records protected by HIPPA. Although the scope of plaintiff's request is absurd, defendant did not object

on that basis. In fact, he did not object at all -- he merely refused to comply. (docket # 144 at 20, ID# 1077). Here, the court will generally leave the parties to the mess of their own making. The court will restrict the scope of production to responsive grievances filed from November 26, 2006, through October 7, 2009 (one year before plaintiff began his confinement at the jail through one year after he was transferred into the custody of the Michigan Department of Corrections). Under Rule 34(a)(1) the requesting party may inspect or copy documents in the responding party's "possession, custody, or control." FED. R. CIV. P. 34(a)(1). Plaintiff, like every other litigant, must pay his own discovery expenses. *See Cage v. Harry*, No. 1:09-cv-512, 2010 WL 3909473, at * 2 (W.D. Mich. Sept. 30, 2010). Thus, if plaintiff desires copies of grievances, he will have to pay for them, and it could prove extraordinarily expensive given the scope of his request. Alternatively, plaintiff could make arrangements to inspect the requested grievances, but, at this juncture, it is a matter for the parties to resolve and they must do so as quickly as possible. The court will require production of documents responsive to request 8, as narrowed in temporal scope by the court.

Request 9 sought production of additional grievance materials:

9.      Provide the same grievance materials as requested in #8, regarding punishments without due process of law, or complaints of "placement" in the front or back-max areas.

RESPONSE: Defendant objects to the form of this request as it assumes that placement in the front-max and back-max cells itself is a form of punishment. Without waiving said objections, state Defendant is not in possession of any such materials.

(docket # 184-3, ID# 2046). Defendant Bosscher will be required to supplement his response to request 9 by providing an unambiguous statement whether there are responsive documents in his

"possession, custody, or control." FED. R. CIV. P. 34(a)(1).  If he does have legal access to responsive documents, they must be produced.

Request 10 sought production of jail policies:

10.   Provide a copy of all jail policies, directives or instructions concerning the housing of prisoners and pre-trial detainees (please make the distinction if any) in maximum security or isolation cells.  This includes the housing of same for disciplinary purposes or housing purposes.

RESPONSE:  Defendant objects to this request as irrelevant and not calculated to lead to the discovery of admissible evidence.  Without waiving said objections, state there are no policies regarding "housing ... for disciplinary or housing purposes.["]  Attached as Exhibit 5 are the relevant Missaukee County Policies and Procedures, along with a blank "Primary Security Level Assignment" question sheet utilized during the booking process.

(docket # 184-3, ID# 2046).  Plaintiff's argument was directed against defendant's objection.  The court has determined that the objection was waived.  Plaintiff states that defendant has "more or less, provided the relevant materials."  (docket # 144 at 20, ID# 1077).  The court will not compel any further production of documents in response to this request.

Request 11 was an interrogatory asking for the last known address of former Missaukee County jail inmates:

11.   Provide the last known address for the following former MCJ inmates, at the time period in question, as determined by records in your custody/control:

A.   Jeffrey Cannell
B.   Darrell Deering
C.   Charles (Charlie) Dykgraf
D.   Joseph Fellows
E.   Jay Parker Foust
F.   Joseph Grabowski
G.   Randy Helsel (of Grayling)
H.   Robert Kersey
I.   Robert Marsh

J.      Nicholas (Nick) Moon
K.      Donald J. Oakes Jr.
L.      James Winrick Jr. (spelling may be Winnrick or Winrrick)
M.      Richard Grass
[N].    Michael O'Brian.

(docket # 183-4, ID#s 2046-48). Defendant made an objection that this was actually an interrogatory

rather than a request for production of documents. He stated: "Defendant does not have records of

the "last known address" for the individuals in question, other than what may have been provided

by the inmate at booking and for those that are transferred to the Michigan Department of

Corrections. While Defendant is not required to create records in response to a request for

production, the following are the last known addresses." Defendant gave the last known addresses

for the individuals that plaintiff had listed. (*Id.*). Plaintiff's quibble with defendant's response to

his "request for production of documents" is that "plaintiff asked for the last known address 'at the

time period in question' [and] [t]his time period was defined in the instructions." (docket # 144 at

20, ID# 1077). As previously noted, plaintiff did not provide the court with a copy of the purported

instructions. In any event, defendant's response was more than sufficient.

Request 12 was a compound interrogatory asking for "all educational achievements"

for administering a county jail or "any training required" to be a jail administrator in Michigan:

12.     Provide a copy of all educational achievements, i.e., certificates, degrees, including,
        including but not limited to, law enforcement, and/or constitutional law/State law
        Prisoner Rights, and training for the administrating of a Michigan County Jail,
        medical training, Corrections or Sheriff Department training, or any other training
        required to be a Michigan County Jail Administrator.

RESPONSE:  Defendant objects to the production of any records contained in Defendant Martin's personnel file, as such information is private and not subject to disclosure.

(docket # 184-3, ID# 2048).  The court will not compel a response to this baffling interrogatory.

Request 13 asked for documents considered in the hiring of defendant Martin:

13.    Provide any documents, notes, or other that were considered in the hiring of Andrea Martin as the Missaukee County Jail Administrator.

RESPONSE:  Defendant objects to the production of any records contained in Defendant Martin's personnel file, as such information is private and not subject to disclosure.  Without waiving said objections, state that each individually named Defendant Missaukee County Sheriff's Deputy was hired based on his or her qualifications, education and prior experiences, consistent with state requirements for corrections officers.

(docket # 184-3, ID# 2048-49).  The court will not order production of Martin's personnel file for the reasons stated in the discussion of request for production 3 to Missaukee County.  Defendant Bosscher will be ordered to produce any document(s) in his possession, custody, or control, setting forth the educational, experience, and training required for an individual to be hired as the Missaukee County jail administrator as of the date defendant Martin was hired by the County for that position.

Request 14 was a request for any grievances ever filed against defendant Bosscher:

14.    Please provide a copy of any grievances that have ever been submitted complaining of your conduct while a law enforcement officer, including but not limited to, as Sheriff of Missaukee County.

RESPONSE:  Defendant objects to this request as overbroad, unduly burdensome, vague, irrelevant and not calculated to lead to the discovery of admissible evidence.  Defendant would have to search through the inmate file of every inmate that was ever housed in the Missaukee County Jail to determine whether any grievances were made against him.  Further, evidence of prior grievances is not proof of the underlying events, and is irrelevant to whether Plaintiff can prove that Defendant acted with deliberate indifference to any of his objectively serious medical needs, or otherwise violated Plaintiff's constitutional rights.  Further, Defendant will not provide information protected from disclosure pursuant to law,

including but not limited to medical information protected by the Health Insurance Portability and Accountability Act.

(docket # 183-4, ID# 2049). Plaintiff's request 14 far exceeds the scope of fair discovery. The court will not order production of any grievances beyond those identified above in connection with request 8.

Plaintiff's arguments with regard to requests 15 and 16 were limited to challenges to defendant's objections. (docket # 144 at 21, ID# 1078). The court has determined that the objections were waived. There is nothing further to compel.

Request 17 asked for production of sick call sheets:

17.   Provide a copy of all sick call sheets for the time period in question.

RESPONSE: Defendant objects to this request as vague and overbroad. Defendant does not know what is meant by the phrase "sick call sheets". Further, Defendant will not provide information protected from disclosure pursuant to law, including but not limited to medical information protected by the Health Insurance Portability and Accountability Act. To the extent Plaintiff is requesting his own medical information and records, these are attached.

(docket # 183-4, ID# 2050). Plaintiff is seeking the sick call lists identifying the inmates to be seen by a doctor. He states that the lists were referred to by "numerous C/O[]s in the jail during the time period in question." (docket # 144 at 21-22, ID#s 1078-79). Defendant will be ordered to produce responsive documents. The parties must work out as soon as possible the arrangements for plaintiff's inspection of these potentially voluminous documents and/or payment for copies. (*See* request 8 *infra*). Any privacy concern can be addressed by a protective order.

Request 18 is narrower than request 17 because it seeks only the lists regarding the prisoners scheduled to see Dr. Ureta:

18. Provide a copy of all lists of all prisoners who were scheduled to see Dr. Ureta on sick-call each week, or other, for the time period in question.

RESPONSE: Defendant will not provide information protected from disclosure pursuant to law, including but not limited to medical information protected by the Health Insurance Portability and Accountability Act.

(docket # 183-4, ID# 2050). The court will not order any further production in response to this request because defendant's response to request 17 will include the lists of prisoners to be seen by Dr. Ureta during the period of plaintiff's incarceration at the Missaukee County jail.

Request 21 asked for production of documents that were sent with plaintiff when he was transferred into the MDOC's custody:

21. Provide an authenticate copy of any confidential or other letter/document that you sent, pertaining to the Plaintiff, with the Missaukee County Deputies that transported Plaintiff, on 10/71208 to Jackson (Michigan) Prison, for the purposes of delivering said letter/document to the MDOC.

RESPONSE: The only records that would have been provided to the prison would have been Plaintiff's medical records and the Michigan Department of Corrections Questionnaire and Medical Transfer Record. Attached as Exhibit 10 is a blank copy of these documents. The originals, when completed, are sent with the inmate being transferred.

(docket # 183-4, ID# 2051). Defendant gave a partial response. He identified the documents that would have been sent with plaintiff and he noted that the MDOC would have kept the originals. However, defendant produced nothing in response to plaintiff's request and said nothing about retained copies. Defendant must either provide an unambiguous statement that he does not have copies of the documents in his possession, custody, or control, or produce the documents responsive to this request.

C.    Martin

Plaintiff asks the court to compel defendant Martin to produce documents in response to requests 3, 7, and 10. (docket # 144 at 17-18, ID#s 1074-75). The court will not compel any further response to request 3 because plaintiff failed to set forth verbatim or provide the court with a copy of his request and defendant's response.[7] (docket # 184-3, ID#s 2040-41).

Request 7 was a request for copies of policies:

7.    Provide copies of any and all policies, directives, or instructions that you relied on each time you had Plaintiff moved from B-cell to maximum security, and relied on to justify your "moved at our discretion" and "housing purposes only" responses given on Plaintiff's grievances. See Exhibits 14 and 16.

RESPONSE: Defendant objects to this request, as no such documents exist.

(docket # 184-3, ID# 2041). Defendant Martin's response that no such documents exist is unambiguous.

Request 10 sought copies of plaintiff's health care records. (docket # 184-3, ID# 2042). Plaintiff's only argument concerned defendant's now overruled objection. (docket # 144 at 18, ID# 1075). Plaintiff received copies of his health care records. There is nothing further to compel in response to this request.

**Conclusion**

For the reasons set forth herein, plaintiff's motions to compel against the Missaukee County defendants will be granted in part and denied in part. The motions will be granted to the

---

[7]W.D. MICH. LCIVR 7.1(b).

extent that defendant Martin will be ordered to serve supplemental answers under Fed. R. Civ. P. 33 to the following interrogatories which the *pro se* plaintiff erroneously posed as requests for admissions:  request 4 to clearly address the date of "11/28/07" specified by plaintiff (docket # 184-1, ID# 1994); request 8 by providing an unambiguous response (*Id.* at ID# 1995); request 9 to answer plaintiff's question whether prisoner Grass "was classified or considered a very high security risk" (*Id.* at ID# 1995); request 10 to answer whether "Grass was locked in his cell 23 hours a day" (*Id.* at ID# 1995); request 11 to answer whether "Plaintiff was  locked in his cell each day for his own protection while Mr. Grass was let out of his cell for an hour to use the phone and shower" (*Id.* at ID# 1996); and request 13 to answer whether Martin had a policy, practice or custom "of placing prisoners in 'back-max' and 'front-max' as punishment for misconducts" (*Id.* at ID# 1996).  Further, Martin will be required to serve a supplemental answer to interrogatory 2.  (docket # 184-4, ID# 2063).

Defendants Darcy Hibblen, Jason Behl, and Julie Anderson will be ordered to serve amended  answers under Fed. R. Civ. P. 36(a)(6) to plaintiff's request 2.  (docket #s 184-1, ID# 2000; docket # 184-2, ID#s 2013, 2016).

Defendant Eric Wickstrom will be ordered to serve an amended answer under Fed. R. Civ. P. 36(a)(6) to request 9.  (docket # 184-2, ID# 2024).

Defendant Davis Deruiter will be ordered to serve an amended answer under Fed. R. Civ. P. 36(a)(6) to request 15.  (docket # 184-3, ID# 2030).

Defendant Stefanie Mills will be ordered to serve amended answers under Fed. R. Civ. P. 36(a)(6) to requests 2 and 5.  (docket # 184-3, ID# 2033).

Missaukee County will be ordered to produce in accordance with Fed. R. Civ. P. 34 documents responsive to request for production 3 (docket # 184-3, ID# 2036), but only to the extent of any documents in its possession, custody, or control, setting forth the educational, experience, and training required for an individual to be hired as the Missaukee County jail administrator as of the date defendant Martin was hired by the County for that position.

Defendant James Bosscher will be ordered to produce in accordance with Fed. R. Civ. P. 34 documents responsive to request for production 8, as narrowed in temporal scope by the court (docket # 184-3, ID#s 2045-46), and request for production 17 (docket # 183-4, ID# 2050). He will be ordered to produce documents responsive to request for production 13 (docket # 184-3, ID# 2048-49), but only to the extent of any documents in his possession, custody, or control, setting forth the educational, experience, and training required for an individual to be hired as the Missaukee County jail administrator as of the date defendant Martin was hired by the County for that position. Defendant Bosscher will be ordered to provide complete responses to requests for production 9 and 21 (docket # 183-4, ID#s, 2046, 2051), either by serving unambiguous responses that he does not have documents responsive to requests 9 and 21 in his possession, custody, or control, or producing the documents.

Defendants will be required to comply with this order and file a proof of service of their supplemental and amended answers within 21 days after entry of this order. Defendants should not anticipate *any* extension of this deadline.

Plaintiff's motions will be denied in all other respects.

Finally, this court observes that both parties have acted unreasonably. Plaintiff has attempted to subvert the discovery limits of the Federal Rules, has propounded unreasonably broad and often incomprehensible discovery requests, and has asked for relief with regard to numerous adequate responses. Defense counsel has interposed evasive and meritless objections, has ignored the time limitations of the Federal Rules, and has shown less than a working knowledge of this court's Local Rules. Neither side should be rewarded with the imposition of sanctions.

Dated:  October 28, 2013          /s/  Joseph G. Scoville
                                  United States Magistrate Judge