UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

|  |  |  |
|---|---|---|
| ROBERT ALLEN BAKER, #182416, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:09-cv-1059 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COUNTY OF MISSAUKEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C.
§1983.  (Am. Compl. ¶¶ 1, 5, ECF No. 29, PageID.307, 308).  The events giving rise to
this lawsuit allegedly occurred between November 26, 2007, and October 7, 2008, while
plaintiff was held in the Missaukee County Jail (MCJ).  Plaintiff was a pretrial
detainee at MCJ from November 26, 2007, through September, 3, 2008.  From
September 4, 2008, through October 7, 2008, plaintiff was a convicted felon awaiting
sentencing.  On September 4, 2008, a Missaukee County Circuit Court found plaintiff
guilty of delivery of less than 50 grams of heroin, possession of less than 25 grams of
heroin, possession with intent to deliver marijuana, maintaining a drug house, felon
in possession of a firearm, and possession of a firearm during the commission of a
felony.  On October 6, 2008, plaintiff was sentenced as a fourth-offense habitual
offender to 5 to 25 years' imprisonment for delivery of heroin, 3 years and 10 months

to15 years for possession of heroin, 4 to15 years for possession with intent to deliver marijuana, 10 months to 15 years for maintaining a drug house, 3 to 25 years in prison for felon-in-possession, and 2 years for felony-firearm. *See People v. Baker*, No. 289056, 2010 WL 624305, at * 1 (Mich. Ct. App. Feb. 23, 2010).

Plaintiff named Missaukee County and eleven of its employees as defendants in this lawsuit:

(1).   Sheriff James Bosscher;

(2).   Lieutenant Andrea Martin;

(3).   Dispatch Sergeant David Deruiter;

(4).   Detective Erik Wien;

(5).   Corrections Officer Carole Yonkman;

(6).   Corrections Officer Eric Wickstrom;

(7).   Corrections Officer Darcy Hibblen;

(8).   Corrections Officer Stefanie Mills;

(9).   Corrections Officer Kenneth Bigger;

(10).   Corrections Officer Julie Anderson; and

(11).   Corrections Officer Jason Behl.

Collectively, this group is referred to as the Missaukee County defendants. There is one non-Missaukee County defendant: Sotero Ureta, M.D.

Plaintiff alleges that all defendants were deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment and Fourteenth Amendment's Due Process Clause. (ECF No. 29, Am Compl. ¶¶ 79-98, PageID.332-

346) (Counts I and II).  In addition, he alleges that Dr. Ureta violated his rights under the Equal Protection Clause by prescribing narcotics for other jail inmates, but not plaintiff.  He alleges that Lieutenant Martin violated his rights under the Equal Protection Clause by arranging for medical care for other inmates, but not for plaintiff, and by moving him from a general population cell to an isolation cell without adequate procedural protections.  (*Id.* at ¶¶ 99-101, PageID.347) (Count III).  He alleges that defendant Martin's decision to transfer him to isolation cells on two occasions constituted retaliation in violation of his First Amendment rights.  (*Id.* at ¶ 102, PageID.34-48) (Count IV).  Plaintiff seeks an award of damages.  (*Id.* at ¶ 113, PageID.356-57).

The matter is now before the Court on defendants' motions for summary judgment.  (ECF No. 226, 232).  On October 29, 2013, the Court entered an order establishing December 18, 2013, as plaintiff's deadline for filing his response to defendants' motions.[1]  (10/29/13 Order, ECF No. 224).  Plaintiff elected not to file a response to defendants' motions for summary judgment.  For the reasons set forth

---

[1]The Court expressly advised all parties that it would be looking to this round of briefing to properly frame the issues and prohibited all parties from relying on earlier briefs.  (10/29/13 Order at 2, ECF No. 224, PageID.2376).  Thus, the Court's review is limited to the arguments and evidence presented in connection with defendants' motions for summary judgment.  FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *see Shreve v. Franklin County, Ky*, 743 F.3d 126, 136 (6th Cir. 2014).  "It was plaintiff's job to point with specificity and particularity in the relevant brief rather than just dropping a pile of paper on the district judge's desk and expecting him to sort it out."  *Dean-Lis v. McHugh*, 598 F. App'x 412, 415 (6th Cir. 2015) (quoting *Wimbush v. Weyth*, 619 F.3d 632, 638 n.4 (6th Cir 2010)).

herein, I recommend that defendants' motion for summary judgment be granted and that judgment be entered in defendants' favor on all plaintiff's claims.

## Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 432 (6th Cir. 2013). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The Court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R.

-4-

Civ. P. 56(e)(2), (3); *see El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 427 (6th Cir. 2013).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990).  "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555  F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013).

Although plaintiff elected not to file a response to the motion for summary judgment, the Court may not for that reason alone enter judgment against plaintiff. *See Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991); *accord Cacevic v. City of Hazel Park*, 226 F.3d 483, 486 (6th Cir. 2000).  Rather, the Court is required to examine defendants' motions to ensure that defendants have discharged their burdens.[2]

Among other things, the individual Missaukee County defendants argue that they are entitled to dismissal of plaintiff's claims against them on the basis of qualified immunity.  "A government official sued under section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly

---

[2]Defendants' motions for summary judgment have been pending since 2013. Plaintiff did not object to the evidence presented in support of the motions. *See* Fed. R. Civ. P. 56(c)(2). All such objections are deemed waived.  Consideration of the evidence presented will not result in any "gross miscarriage of justice." *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); *see also Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 572 (6th Cir. 2014); *Strickland v. Michigan Secretary of State*, No. 1:10-cv-1119, 2012 WL 851128, at * 3 n. 2 (W.D. Mich. Jan. 27, 2012).

established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts and presented evidence[3] showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id*. Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. ... Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the

---

[3]A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir.1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004); *see Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009).

> officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198.  Qualified immunity is an immunity from suit rather than a mere defense to liability.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201).  "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'"  *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 198-99); *see Perez v. Oakland County*, 466 F.3d 416, 428 (6th Cir. 2006) ("Because most legal rights are clearly established at some level of generality, immunity would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'").  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In its recent decision in *Plumhoff v. Rickard*, the Supreme Court reiterated clearly established law is determined in the light of the particular circumstances faced by the individual defendant at the time he or she acted, not on the basis of a high level of generality:

> [A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate. In addition, we have repeatedly told courts not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

134 S. Ct. at 2023 (citations and quotations omitted); *see also Carroll v. Carman*, 135 S. Ct. at 350 ("This doctrine gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."); *Lane v. Franks*, 134 S. Ct. at 2383 (the question must be "beyond debate" at the time the defendant acted); *Pearson*, 555 U.S. at 245 (If judges are in disagreement on an issue at the time the defendant acted, it is "unfair" to later subject the defendant to monetary damages "for picking the losing side of the controversy.").

Once a defendant raises the qualified immunity defense, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). Plaintiff did not file a brief in response to defendants' motions for summary judgment. He has not addressed, much less carried his burden of demonstrating that the individual Missaukee County defendants claiming qualified immunity[4] are not entitled to it.

---

[4]Dr. Ureta also asserts qualified immunity. The law regarding when the protection of qualified immunity can extend to private individuals is evolving. *See Filarsky v. Della*, 132 S. Ct. 1657 (2012); *McCallum v. Tepe*, 693 F.3d 696 (6th Cir. 2012); *Hendricks v. Pickway Corr. Inst.*, No. 2:08-cv-580, 2015 WL 7657490, at * 3-4 (S.D. Ohio Nov. 25, 2015). I do not reach the issue of Dr. Ureta's entitlement to qualified immunity because he is entitled to entry of judgment in his favor on other grounds.

## Proposed Findings of Fact

The following facts are beyond genuine issue.  Plaintiff filed this lawsuit on November 19, 2009, while he was in the custody of the Michigan Department of Corrections (MDOC) following his conviction in September 2008 by a Missaukee County jury of delivery of less than 50 grams of heroin, possession of less than 25 grams of heroin, possession with intent to deliver marijuana, maintaining a drug house, felon in possession of a firearm, and possession of a firearm during the commission of a felony.  On October 6, 2008, plaintiff was sentenced as a fourth-offense habitual offender to 5 to 25 years's imprisonment for delivery of heroin, 3 years and 10 months to 15 years for possession of heroin, 4 to 15 years for possession with intent to deliver marijuana, 10 months to 15 years for maintaining a drug house, 3 to 25 years in prison for felon-in-possession, and 2 years for felony-firearm.  *See People v. Baker*, No. 289056, 2010 WL 624305, at * 1 (Mich. Ct. App. Feb. 23, 2010).  Plaintiff filed this lawsuit while his appeal was pending in the Michigan Court of Appeals.[5]

---

[5] A component of this lawsuit was plaintiff's unsuccessful attempt to undermine his criminal convictions through this civil litigation.  For example, plaintiff attacked the knowing and voluntary nature of his incriminating statements made to Detective Wien by asserting that it had been induced by the withholding medication (*see* Am. Compl. ¶¶ 21, 26, 82(D) and (E), 93(J), 95(A) and Ex. 1, PageID.311, 313, 335, 344-45, 359-68), that a change in his cell assignment had an adverse impact on his ability to participate in court proceedings in the criminal case (*Id.* at ¶¶ 49, 51-57, 61-64, 83 (N), PageID.321-27, 337), that the muscle relaxant prescribed by Dr. Ureta left him feeling "hung-over" and "drugged out," disoriented, and groggy and unable to meaningfully participate in court proceedings (*Id.* at ¶¶ 57-59, 75, 110, PageID.324-25, 330, 353-54).  Plaintiff could not collaterally attack his criminal convictions and sentence in this civil case brought under section 1983.  On May 3, 2011, the Court dismissed "all claims involving Plaintiff's criminal case, including challenges to the effectiveness of his counsel, his competency to stand trial, allegedly coercive interrogation, and the admissibility of his statements to police[.]"  (5/3/2011 Order, ECF No. 68 at PageID.804).  On June 16, 2011, plaintiff filed a habeas corpus petition in this Court.  On May 27, 2014 by District Judge R. Allan Edgar denied plaintiff's habeas corpus

On November 26, 2007, at approximately 9 p.m., plaintiff was arrested and later that evening began his confinement at Missaukee County jail (MCJ).[6] (Am. Compl. ¶ 22, PageID.311). Plaintiff was a pretrial detainee at MCJ from November 26, 2007, through September 3, 2008, and a convicted prisoner awaiting sentencing from September 4, 2008, through October 7, 2008. (*Id.* at ¶ 21, PageID.311). All the individuals named as defendants, other than Dr. Ureta, were Missaukee County employees during the period at issue: November 26, 2007, through October 7, 2008. (Ureta Aff. ¶¶ 3-6, ECF No. 231-2, PageID.2588; Am. Compl. ¶¶ 9-20, PageID.308-10).

---

petition. *See Baker v. Perry*, 2:11-cv-233 (W.D. Mich. May 27, 2014). The United States Court of Appeals for the Sixth Circuit denied plaintiff's motion for a certificate of appealability. *See Baker v. Perry*, No. 14-1829, slip op. (^th Cir. Dec. 22, 2014).

Plaintiff was paroled in 2012. (ECF No. 219). On March 26, 2014, plaintiff filed a notice of change of address notifying this Court that his new address at the Roscommon County jail was temporary and that he would notify the Court of his new place of incarceration after he was sentenced on a drug possession charge. (ECF No. 237). State records indicate that plaintiff entered a guilty plea in Roscommon County Circuit Court to possession of less than 25 grams of cocaine. In April 2014, he was sentenced to a new term of imprisonment and he had his parole on the earlier convictions revoked. On June 5, 2014, plaintiff filed a change of address notifying the Court that he was an inmate at the Gus Harrison Correctional Facility. (ECF No. 238). Plaintiff is currently an inmate at the Detroit Reentry Center. (ECF No. 240).

[6]Plaintiff's amended complaint is verified under penalty of perjury. Under Sixth Circuit precedent, this Court must consider the amended pleading as plaintiff's affidavit in opposition to defendants' motions for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

On November 26, 2007, plaintiff received an intake assessment at MCJ.  He did not have any visible needle marks, slur his speech or smell of alcohol.  He did not appear anxious or afraid, incoherent or withdrawn, depressed or confused.  Plaintiff related that he was on a soft food diet because he had no molars and was taking methadone for back pain.  (ECF No. 227-4, PageID.2492-93).  Plaintiff's November 26, 2001, health screen by EMS medical personnel indicated that his vision was normal.  His blood pressure was 144/78 and his pulse was 80.  It was noted that plaintiff had a surgical procedure pending for his lower back problems.  (ECF No. 227-5, PageID.2495-96).

Plaintiff states that when he was being booked on November 26, 2007, he told Sergeant David DeRuiter that he was methadone dependent.  (Am. Compl., ¶ 22, PageID.311).  Plaintiff's  physicians at Grayling Family Practice, Michael Burkley, D.O. and Charles Gosling, M.D., had never offered that diagnosis.  (Grayling Family Practice Progress Notes, ECF No. 227-2, PageID.2416-63).[7]  Plaintiff does not allege that he informed anyone at MCJ of any dependency on illegal drugs.  Plaintiff was assigned a cell in the back part of the jail.  He believes that he should have been

---

[7]It is unclear how or why the physicians at Grayling Family Practice who prescribed methadone began to include notations in some progress notes indicating that plaintiff had no history of illicit drug use or prescription misuse. (ECF No. 227-2, PageID.2421, 2445).  Grayling Family Practice progress notes from 2006 and earlier stated that plaintiff had "admitt[ed] to taking another patient[']s methadone" and that he had a significant history of polysubstance abuse, including alcohol and intravenous drugs.  (*Id.* at PageID.2456, 2460-61, 2463).

assigned to a "detoxification cell" located closer to the jail's office.  (Am. Compl. ¶ 22, PageID.311-12).

On November 27, 2007, plaintiff was arraigned in Missaukee County Circuit Court and the court appointed counsel.  (Am. Compl. ¶ 27, PageID.313).  According to plaintiff, on November 28, 2007, Lieutenant Andrea Martin accepted a refill script for plaintiff's pain medication from his mother and then refused to have the prescription filled.  (Am. Compl. ¶¶ 25, 93(c), PageID.312, 343).  Plaintiff claims to have had a conversation with Lieutenant Martin and that she refused to allow plaintiff to have the narcotic medication that he wanted because the jail was a non-narcotic facility.  (Am. Compl. ¶ 25, PageID.312).  It is undisputed that MCJ is a non-narcotic facility.  (ECF No. 236-2, PageID.2705-07).  There is no evidence that plaintiff or any member of his family sought an alternative non-narcotic medication from plaintiff's physicians at Grayling Family Practice.  (ECF No. 227-2, PageID.2416-63).  It is not disputed that plaintiff had access to over-the-counter pain medications such as Tylenol and aspirin. (ECF No. 232-5, PageID.2636-40).

Plaintiff states that on November 28, 2007, he began feeling ill.  Before that date, he had been feeling well enough to complain that the food he was provided was not soft enough.  He states that he told Corrections Officers Mills and Wickstrom that he was feeling ill from lack of medication and experiencing back pain.  (Am. Compl. ¶ 24, PageID.312).  His request for medical attention mentions only back pain.  (ECF No. 232-1, PageID.2626).  Plaintiff signed a medical release form and it was faxed to Dr.

Burkley at Grayling Family Practice.  (ECF No. 228-2, PageID.2516; ECF No. 232-2, PageID.2628-29).

On November 29, 2007, plaintiff elected to make statements to Detective Wien, which plaintiff later regretted.  He states he experienced withdrawal symptoms from methadone rather than his illegal street drugs, which purportedly left him in a "surreal state."  (Am Compl. ¶¶ 27,  39, PageID.313, 316).   Plaintiff states that he made requests to Corrections Officers Mills, Wickstrom, and Lieutenant Martin asking that he be taken to a doctor.  (Am. Compl. ¶ 26, PageID.313).  There is no evidence from plaintiff's physician or from any other physician that plaintiff took methadone at a dose and for length of time that significant withdrawal symptoms would occur.  The substance of plaintiff's November 29, 2007, statements to Detective Wien apparently came into evidence when plaintiff testified at his trial.  (Am. Compl. Ex. 1, Partial Hearing Transcript at 3, 37, 45-46, 60-61, 75, 82, PageID.361-68).

On November 30, 2009, at about 6 p.m., plaintiff complained of left arm and chest pains that had started about an hour earlier.  He indicated that he had not been doing anything in particular.  He reported some nausea, but no vomiting.  (ECF No. 232-4, PageID.2500).  Officer Kenneth Bigger contacted emergency medical services.  (Am. Compl. ¶ 28, PageID.313).  Paramedic Deborah Beerens and EMT Specialist Richard Bradley examined plaintiff.  These emergency medical technicians determined that plaintiff did not have any medical condition that warranted transporting him from jail to a hospital.  (ECF No. 232-4, PageID.2634).

On December 2, 2007, plaintiff's appetite had improved to the point where he was complaining that his broken partial denture made it difficult for him to chew his food. On December 3, 2007, he was placed on soft food diet. (Am. Compl. ¶ 32, PageID.314; ECF No. 233-2, PageID.2657; ECF No. 233-3, PageID.2659). On December 3, 2007, jail officials notified plaintiff that they had not yet received medical records from his doctor. (ECF No. 229-2, PageID.2542; ECF No. 233-1, PageID.2655). There is no evidence that plaintiff or any member of his family made any attempt to obtain the records and provide them to jail officials.

On December 8, 2007, plaintiff filed a grievance indicating that he was having some difficulty chewing his food. He stated that he had broken a bottom, partial denture prior to his confinement at MCJ. The grievance response advised plaintiff that jail would continue to provide him with the soft diet he had requested. (Am. Compl. ¶ 32, PageID.314; ECF No. 233-4, PageID.2661). Plaintiff states: "[O]n 12/9/07 Plaintiff broke a restored tooth on a piece of meat gristle while trying to masticate his food." (Am. Compl. ¶ 33, PageID.314). On the same date, he wrote a letter to Lieutenant Martin proclaiming that he was "largely innocent" of the criminal charges against him and demanding that she respond to his requests regarding medical and dental care. (ECF No. 29-2, PageID.372-73). On December 17, 2007, plaintiff complained that he needed his partial denture fixed and that he was forced to eat his food in chunks. (ECF No. 29-3, PageID.375; ECF No. 233-4, PageID.2661).

On January 23, 2008, plaintiff was taken to a dentist. His broken partial denture was sent out for repairs. On the basis of the x-rays of plaintiff's loose tooth,

the dentist recommended that it be extracted.  The dentist provided plaintiff with prescriptions for the antibiotic amoxicillin and ibuprofen for his discomfort.  On follow-up visit two weeks later, the dentist removed a tooth and checked the fit of the repaired partial denture.  (Am. Compl. ¶ 45, PageID.318; ECF No. 223-4, PageID.2661; ECF No. 233-5, PageID.2663-64).

On January 20, 2008, plaintiff wrote a lengthy letter addressed to Sheriff Bosscher asserting that the sheriff and his subordinates, a detective, and possibly the judge presiding over his criminal trial were engaged in a vast conspiracy to deprive him of medical and dental care in order to coerce him into pleading guilty to crimes that he did not commit.  (ECF No. 29-4, PageID.388-97).  Plaintiff had already been scheduled for a January 23, 2008, appointment with the dentist, Dr. Susan Vignola. As noted above, plaintiff was transported outside the jail for dental treatment by Dr. Vignola as scheduled, and two weeks later, plaintiff was taken back to Dr. Vignola's office for additional dental care.  (Am. Compl. ¶ 45, PageID.318).

In December 2007, plaintiff was moved to a B-cell at MCJ, a six-man medium security cell.  (Am. Compl. ¶ 35, PageID.315).  During his initial weeks at the jail, plaintiff had been confined to a higher security cell.  Plaintiff did not find his six-man, medium security cell entirely satisfactory.  He stated that when the jail's rules were broken, all the inmates in his cell were punished, rather than punishing an individual perpetrator in accordance with "posted rules in B-cell."  (Am. Compl. ¶ 36, PageID.315). For example, on or about January 19, 2008, when "Plaintiff's cell-mates in B-cell flooded the cell and hallway," ostensibly "in protest to Defendant[]s Yonkman['s] and

Wickstrom's repeated punishing of the entire cell because of a malfunctioning (water) sink," plaintiff found himself spending approximately 48 hours in a "detox cell" while the jail officials attended to the mess.  (Am. Compl. ¶ 43, PageID.317).  Inmates also lost the privilege of obtaining store items requiring hot water for a few weeks.  (Am. Compl. ¶¶ 46-47, PageID.319-20).

Sotero M. Ureta, M.D., is a licensed physician.  He has been in private practice in Lake City Michigan since 1998.  (Ureta Aff. ¶¶ 1-4, ECF No. 231-2, PageID.2588).  Occasionally, jail personnel contact Dr. Ureta regarding medical care for prisoners.  This is a small potion of Dr. Ureta's practice, and he provides care on an on-call and as needed basis.  Dr. Ureta first became aware of plaintiff's medical condition on January 3, 2008, when he received plaintiff's medical records from Grayling Family Practice.  (*Id.* at ¶¶ 5-9, PageID.2588; ECF No. 228-2, PageID.2517-23).  A medical examination was not necessary and would not have altered the action taken by Dr. Ureta.   The records from Grayling Family Practice provided sufficient information regarding plaintiff's chronic lower back problem and treatment history for Dr. Ureta to prescribe Ultram, a non-narcotic medication used to treat chronic pain.  (Ureta Aff. at ¶¶ 10-11, 16-18, PageID.2588-89; ECF No. 229-4, PageID.2546-55; ECF No. 232-5, PageID.2641-50).

Plaintiff would have preferred a prescription for the narcotic methadone that he had been receiving prior to his incarceration.  Plaintiff had been receiving Motrin, Tylenol, and ibuprofen at MCJ before he began receiving Ultram.  (ECF No. 232-5, PageID. 2636-52).   Dr. Ureta had no knowledge that plaintiff had experienced any

episode of narcotic withdrawal.  Dr. Ureta did not prescribe narcotic medications for any MCJ prisoners.  (Ureta Aff. ¶ 19, PageID.2589).

Plaintiff states that in November, December, and January he made repeated requests to Sergeant DeRuiter to help him with his requests to see Dr. Ureta and a dentist.  (Am. Compl. ¶ 48, PageID.320).

On February 11, 2008, plaintiff requested a second mattress.  (ECF No. 229-5, PageID.2562; ECF No. 234-1, PageID.2667-68).  On February 12, 2008, Dr. Ureta provided a prescription for a second mattress.  (Ureta Aff. at ¶ 12, PageID.2589; ECF No. 228-2, PageID.2506; ECF No. 234-1, PageID.2668).  Plaintiff received the second mattress one day after he requested it.  On February 20, 2008, plaintiff requested an increase in his Ultram dose.  (ECF No. 234-2, PageID.2670).  Less than a week after plaintiff made his request, Dr. Ureta approved it and plaintiff began receiving the higher dose requested.  (Ureta Aff. ¶ 13, PageID.2589; ECF No. 230-1, PageID.2567; ECF No. 234-2, PageID.2670).

On April 4, 2008, plaintiff was moved to what he describes as a "back max cell" for a period of three weeks and then was returned to a B-cell assignment.   (Am. Compl. ¶ 49, PageID.322).

On April 7, 2008, Judge William M. Fagerman conducted a hearing in Missaukee County Circuit Court on plaintiff's third attorney's motion to withdraw from the representation.  Judge Fagerman allowed the attorney to withdraw.  Plaintiff complains that the attorney refused to refund any of his fee and plaintiff was forced to accept appointed counsel.  (*Id.*, ¶ 54, PageID.323).

On June 19, 2008, Judge Fagerman heard testimony and argument in plaintiff's criminal case on his motions.  (6/19/08 Partial Hearing Transcript at 1-3, Am. Compl. Ex. 1, ECF No.  29-2, PageID.359-61).  Detective Wien testified that on November 29, 2007, he had been at the jail to serve civil forfeiture papers on plaintiff.  (*Id.* at PageID.362).  Wien testified regarding the statements he obtained from plaintiff and the surrounding circumstances.  (*Id.* at PageID.359-68).

In early July 2008, plaintiff complained of increased back pain.  On July 7, 2008, Dr. Ureta's office was advised that plaintiff had "thrown his back out" and received a request for Flexeril.  On July 7, 2008, Dr. Ureta prescribed Flexeril, a muscle relaxant.  (Ureta Aff. ¶  14, PageID.2589; ECF No. 228-2, PageID.2512; ECF No. 229-4, PageID.2556; ECF No. 235-5, PageID.2651).  Plaintiff's medical records show that before going to jail he had been treated with Flexeril and made no complaints of side-effects.  (ECF No. 227-2, PageID.2425, 2427).

Plaintiff alleges that on July 9, 2008, he was "groggy and out of character" during a "surprise" hearing on his fourth attorney's motion to withdraw.  He blames his purported "lack of focus" on the Flexeril that Dr. Ureta had prescribed for his back pain.  (Am Compl.  ¶¶ 58-59, PageID.324-25).  Plaintiff states that his "attorney accused him of asking counsel to do 'repugnant' things that would be a violation of the professional code of ethics, but refused to elaborate" and plaintiff claims that he "was not even allowed to view the motion.  This proceeding was antagonistic in nature, with counsel, the prosecutor and court all enticing Plaintiff to agree to proceed in Propria

-18-

Persona.  The Plaintiff refused, and counsel's motion to withdraw was denied."  (Am. Compl. ¶ 59, PageID.324-25).

Plaintiff states that he spent about three months, from July 8, 2008, until his transfer into MDOC custody, in what he has labeled as the MCJ's isolation wing. Plaintiff continued to have access to other inmates, but he lacked access to the jail's "general population."  (Am. Compl. ¶ 56, 61 PageID.323-25).

Plaintiff's trial in Missaukee County Circuit Court concluded with the jury's verdict on September 4, 2008, finding him guilty of the aforementioned criminal charges. After conviction, but before sentencing, plaintiff discovered a cyst on his back.  (Am Compl. ¶ 66, PageID.327).  On September 6, 2006, plaintiff reported that he had a lump between his shoulder blades. On September 11, 2008, plaintiff was transported from MCJ to Dr. Ureta's office for treatment.  Dr. Ureta gave plaintiff a prescription for antibiotics.  (Ureta Aff. ¶ 15, PageID.2589; ECF No. 228-2, PageID.2515).  On October 6, 2008, plaintiff was sentenced in Missaukee County Circuit Court.  On October 7, 2008, he was transferred into the MDOC's  custody.  (Am. Compl. ¶ 67, PageID.327).  Plaintiff continued to receive medical attention after his transfer.  (ECF No. 228-5, PageID.2536; ECF No. 229-1, PageID.2540; ECF No. 230-4, PageID.2573-79).  Dr. Ureta did not prescribe narcotic medications for any inmate at MCJ during plaintiff's period of confinement at that facility.  He never refused to see, examine, or treat plaintiff.  (Ureta Aff. ¶¶ 19-20, PageID.2589).

## Discussion

Plaintiff sues defendants under 42 U.S.C. § 1983.  To state a viable claim for relief in a section 1983 action, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States and that defendant committed the alleged deprivation "under color of state law."  *See Am. Mfg. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  As a pretrial detainee awaiting adjudication of criminal charges in the Missaukee County Circuit Court, plaintiff's substantive federal right to adequate medical care was guaranteed by the Due Process Clause of the Fourteenth Amendment.[8]  *See Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009).  Once plaintiff was convicted of felony charges, his substantive federal rights were guaranteed by the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

## I.   Medical and Dental Care

Plaintiff alleges that defendants were deliberately indifferent to his serious medical and dental needs.  (Counts I and II, Am. Compl., ¶¶ 79-98, PageID.332-46).  The Sixth Circuit holds that the standard for medical care under the Due Process Clause of the Fourteenth Amendment is essentially the same as guaranteed to

---

[8]Plaintiff committed the crimes which resulted in his confinement at the MCJ and September 2008 criminal convictions while he was on "probation."  *See Baker v. Perry*, No. 14-1829, slip op. at 3-4 (6th Cir. Dec. 22, 2014).  Whether plaintiff's probation was revoked does not have any significant impact on the applicable analysis because the Sixth Circuit applies the same standards on claims of deliberate indifference to serious medical needs by detainees and convicted prisoners.  *See Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008).

convicted prisoners by the Eighth Amendment. *See Ford v. County of Grand Traverse*, 535 F.3d at 495; *see also Grabow v. County of Macomb*, 580 F. App'x 300, 307 (6th Cir. 2014). Both the Eighth and Fourteenth Amendments prohibit deliberate indifference to a prisoner's serious medical needs. *Spears*, 589 F.3d at 254.

A prisoner claiming violation of this right must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To satisfy the objective component, a plaintiff must allege a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). To satisfy the subjective component, a plaintiff must establish that the defendant knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The deliberate indifference standard requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs is essential to a finding of deliberate indifference." *Miller v. Calhoun County*, 408 F.3d at 813 (citations and quotations omitted).

The defendants do not seriously contest the existence of the objective component of a constitutional violation, namely, the existence of a serious medical need. Plaintiff has degenerative changes in his lower back. He states that he went through a

relatively brief period of withdrawal from a prescription medication (methadone) rather than illegal drugs.  Plaintiff developed an infection around a cracked tooth that required treatment with antibiotics before the tooth was extracted.  A reasonable trier of fact could find in plaintiff's favor on the objective component of his Eight Amendment claims.

In addition to alleging the objective component of a deliberate indifference claim, a plaintiff must satisfy the subjective component, that is, that defendant knew of and disregarded an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 837.  To support an inference of deliberate indifference, a plaintiff must allege facts showing that a particular defendant "knew of" and disregarded a serious threat to health.  *See Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).

A.   Dr. Ureta

Plaintiff alleges that Dr. Ureta was deliberately indifferent to his serious medical needs by prescribing non-narcotic pain medication for plaintiff's lower back problem.  (Am. Compl. ¶ 91, PageID.341-42).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, "federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law."  *Baker v. Stevenson*, 605 F. App'x 514, 518 (6th Cir. 2015) (quoting *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is intended 'to

prevent the constitutionalization of medical malpractice claims.'") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d at 550)).

The Sixth Circuit's recent decision in *Baker v. Stevenson*, is instructive. In June 2006, Robert Charles Baker, # 274862, was an inmate in the Bay County Jail on misdemeanor charges. He "smuggled methadone pills into the jail" that were "subsequently stolen and ingested by two inmates who experienced a fatal overdose. As a result, Baker was convicted of manslaughter and other related charges." 605 F. App'x at 515. Like Robert Allen Baker in this case, Robert Charles Baker had a back impairment and outside the jail and prison environment he had obtained a methadone prescription. *Id.* Like the plaintiff in this case, the plaintiff in *Baker v. Stevenson* brought a section 1983 claim claiming that the defendants were deliberately indifferent to his serious medical needs by allowing him to experience withdrawal symptoms and not supplying him with narcotic pain medication.

The Sixth Circuit found no constitutional violation and affirmed the district court's decision granting summary judgment in favor of the defendants. The Sixth Circuit held that the "Eighth Amendment does not impose a constitutional obligation on prison officials to enable a prisoner's substance abuse or addiction problem." *Id.* "[T]he treatment of chronically suffering prisoners with narcotic medication does not fit neatly into our general Eighth Amendment test. Instead of weighing a single alleged risk of harm, against which the adequacy of official action can be judged, a reviewing court is asked to pass judgment on attempts by prison medical staff to navigate between the Scylla of debilitating pain and the Charybdis of addiction to

prescription drugs." *Id.* at 519. An inmate's belief based on "personal experience" that narcotics provide the only adequate means of treatment is not enough to survive a summary judgment motion. *Id.* at 520. "[T]he Supreme Court and [the Sixth Circuit and this Court] have rejected Eighth Amendment claims that second-guess the medical judgments of medical personnel." *Id.; see also Baker v. Michigan Dep't of Corr.*, No. 1:13-cv-284, 2013 WL 2318900, at * 13-14 (W.D. Mich. May 28, 2013).

Plaintiff has presented no medical evidence indicating that the treatment provided by Dr. Ureta was medically inappropriate, much less rose the level of an Eighth or Fourteenth Amendment violation. I find that defendant Ureta is entitled to judgment in his favor as a matter of law on plaintiff's claims that he was deliberately indifferent to his serious medical needs.

### B.    Lieutenant Martin

Plaintiff alleges that on November 27, 2007, defendant Martin was deliberately indifferent to his serious medical needs accepting a script for methadone hand-delivered by plaintiff's mother and then refusing to have it filled. (Am. Compl. ¶ 93(c), PageID.343). Plaintiff has not presented evidence and argument sufficient to survive defendant Martin's motion for summary judgment based on a claim of entitlement to qualified immunity.

Plaintiff was arraigned in Missaukee County Circuit Court on November 27, 2007, and he has not claimed that he was present at the time his mother purportedly conveyed the script to Lieutenant Martin. The Court must accept for present purposes that on November 28, 2007, plaintiff had a conversation with Ms. Martin and that she

-24-

advised him that he could not have narcotic medication in the jail.  (Am. Compl. at ¶ 25, PageID.312).

Once defendant Martin raises the qualified immunity defense, it was plaintiff's the burden of showing that she was not entitled to qualified immunity.  *See Smith v. Erie County Sheriff's Dep't*, 603 F.3d 414, 418 (6th Cir. 2015) ("Qualified immunity is a shield to § 1983 liability and, when raised, the burden to show that a defendant is not entitled to qualified immunity shifts to a plaintiff.");  *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).  Plaintiff was required to come forward with argument and evidence that Lieutenant Martin's actions on November 27 and 28, 2007, violated clearly established law.

Clearly established law is determined in the light of the particular circumstances faced by the individual defendant at the time he or she acted, not on the basis of a high level of generality.  *Plumhoff v. Rickard*, 134 S. Ct. at 2023.  "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.  In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate. In addition, we have repeatedly told courts not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  134 S. Ct. at 2023.

Plaintiff did not file a brief in response to defendants' motions for summary judgment. He has not addressed, much less carried his burden on qualified immunity.[9] *See e.g.*, *Mantell v. Health Professionals Ltd.*, 612 F. App'x 302 (6th Cir. 2015) ("[A]n official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."); *Lowe v. McMinn County*, No. 1:15-cv-95, 2015 WL 5177734, at * 2 (E.D. Tenn. Sept. 4, 2015) ("[A] a plaintiff's failure to establish either prong is dispositive in favor of a defendant.").

Plaintiff fails to raise a genuine issue of fact for trial on any other claim against defendant Martin. There is no evidence that plaintiff had received methadone for a duration and dosage that would result in any significant withdrawal symptoms. Further, when plaintiff was examined by EMTs, his medical condition did not warrant transportation from the jail to a hospital. Plaintiff's claim that he was not taken to see a dentist with the dispatch he desired after he purportedly cracked a tooth on or about December 9, 2007, does not establish deliberate indifference. Plaintiff was taken to the dentist within days after his mother had contacted the dentist and made payment arrangements for the dental services. The brief period plaintiff had to wait for dental services was less than most individuals outside of prison have to wait to get an appointment with the dentist or to save up enough money to pay the dentist's bill.

---

[9]Suffice it to say that plaintiff had more than enough time to address the issue during the unprecedented length of time defendants' motions have been pending.

-26-

Plaintiff discovered a cyst on his back shortly after he was convicted. He was taken to Dr. Ureta's office and treated. In late September plaintiff requested to be taken back for a follow-up visit which defendant Martin allegedly refused. In a matter of days, plaintiff was sentenced and transferred to the custody of the MDOC where he received a medical intake evaluation.

I find that no reasonable trier of fact could in plaintiff's favor on the subjective component of these claims against defendant Martin.

### C.   Sergeant DeRuiter

Plaintiff alleges that Sergeant DeRuiter was deliberately indifferent to his serious medical needs by doing no more than passing along information to Lieutenant Martin. (Am. Compl. ¶ 94, PageID.344). Plaintiff was examined by the EMTs and they determined that plaintiff's medical condition did not warrant transportation to hospital. Plaintiff received dental care. Defendant DeRuiter and other members of the jail's custody staff were entitled to rely on the judgment of medical professionals regarding the appropriate course of medical and dental treatment. *See McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013); *Arnett v. Webster*, 658 F.3d 742, 755 (3d Cir. 2011); *see also Fantone v. Herbik*, 528 F. App'x 123, 128 (3d Cir. 2013); *Phillips v. Tiona*, 508 F. App'x 737, 744 (10th Cir. 2013).

On this record, no reasonable trier of fact could find that defendant Deruiter was deliberately indifferent to any serious medical or dental need.

D.     Sheriff James Bosscher

Plaintiff seeks to have Sheriff Bosscher held vicariously liable for the actions of subordinates.  (Am. Compl. ¶ 92, PageID.342-43).  Liability under the federal civil rights laws must be premised on an individual's personal involvement in the violation of a plaintiff's constitutional rights.  *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)).  For persons who did not themselves commit an unconstitutional act, a plaintiff must show that the person at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending actor and that such acquiescence was a proximate cause of the plaintiff's harm.  *See Siggers v. Campbell*, 652 F.3d 681, 695 (6th Cir. 2011).  Liability may not be imposed vicariously or upon a theory of *respondeat superior*.  *Id.*; *see Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010).  I find that defendant Bosscher is entitled to judgment in his favor as a matter of law.

E.     Detective Wien

Plaintiff alleges that Detective Wien was deliberately indifferent to his serious medical needs on November 30, 2007, when he disregarded the risk of injury to plaintiff by not delaying his questioning until after plaintiff felt better.  (Am. Compl. ¶¶ 113, PageID.345).  Plaintiff's allegations fail to state a claim of constitutional dimension.  Plaintiff cannot challenge the evidence used against him in the criminal care through this civil action.  Plaintiff's criminal convictions have never been overturned.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok,* 520 U.S. 641, 646 (1977).  Judge Fagerman necessarily found that plaintiff

was well enough to knowingly and voluntarily give an incriminating statements.  I find that defendant Wien is entitled to judgment in his favor as a matter of law on this claim.

   F. <u>Yonkman, Wickstrom, Hibblen, Mills, Bigger, Anderson, and Behl</u>

   Plaintiff makes a generalized allegation that he submitted "numerous medical request kites "through the defendant [Corrections Officers] COs" and that he did not receive answers to these kites and two grievances.  (Am Compl. ¶¶ 96-98, PageID.345-46).  This does not suffice to support a viable claim.   In addition, there is no evidence that these officers were responsible for responding to plaintiff's requests.  Further, as previously indicated, members of the custody staff were entitled to rely on the professional medical judgment of others regarding appropriate medical care for an inmate making frequent requests for more medical or dental care.  I find that defendants Yonkman, Wickstrom, Hibblen, Mills, Bigger, Anderson, and Behl are entitled to judgment as a matter of law on plaintiff's asserting deliberate indifference to his serious medical needs.

## II. Jail Cell Assignments and Security Classification

   Plaintiff was held at MCJ for less than eleven months.  He alleges that his cell assignments violated his rights under the Fourteenth Amendment's Due Process Clause.  (Count I, Am. Compl. ¶¶ 79(H), (I), 82 (H), (K), (L), 83(A), (B), (D)-(F), (K)-(N), 86(B), 87(B), PageID.332, 335-38).  "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment

procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221.  Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989).  The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  A prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87.  The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).  Plaintiff did not have any protected liberty or property interest in his cell assignment or security classification.  Plaintiff states that he spent a total of about a month in what he calls a "back max" maximum security cell and about three months in what he labeled as the jail's isolation wing. (Am. Compl. ¶¶ 22, 35, 43, 49, 56, 61, PageID.311, 315, 317, 321-25).  The brief periods

plaintiff spent in a maximum security cell and the period where he was housed outside his preferred wing of the jail were not atypical and significant in relation to the ordinary incidents of jail life.  *See Sandin*, 515 U.S. at 486.

Plaintiff's claims fare no better when recast as Eighth or Fourteenth Amendment conditions of confinement claims.  Plaintiff has not presented evidence sufficient to support an Eighth or Fourteenth Amendment conditions of confinement claim against any defendant.  The Constitution does not mandate comfortable jails. *Rhoades v. Chapman*, 452 U.S. 337, 349 (1981); *Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001).  I find that defendants are entitled to judgment in their favor as a matter of law on these claims.

### III.    First Amendment Retaliation Claims

Plaintiff alleges that defendant Martin retaliated against him in violation of his First Amendment rights by temporarily assigning him to maximum security cell. (Count IV, Am. Compl. ¶ 102, PageID.347-48).  On summary judgment, a plaintiff asserting a First Amendment retaliation[10] claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in

---

[10]"Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The plaintiff has the burden of proof on all three elements. *See, e.g.,* *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

"The first element [plaintiff] must establish for his retaliation claim[s] [are] that he was engaged in conduct protected by the First Amendment." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). Plaintiff fails to satisfy this initial requirement. He states that he wrote something to the Missaukee County Circuit Court on two occasions "complaining of counsel's lack of representation and sought relief." (Am. Compl. ¶ 102, PageID.347-48). He did not support his claims with copies of the underlying documents. Frivolous complaints are not protected conduct. *See Hill v. Lappin*, 630 F.3d at 472; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (calling a hearing officer a "foul and corrupted bitch" was not protected conduct); *Herron v. Harrison*, 203 F.3d at 415. Plaintiff has not presented evidence on which a reasonable trier of fact could find that he was engaged in protected conduct.

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. Plaintiff suffered the inconvenience of being assigned to a maximum security cell for about a month. "[R]outine inconveniences of [jail] life [] do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011).

Under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue. "The third element of a First Amendment retaliation claim requires the plaintiff to prove a causal connection

between the protected conduct and the adverse action.  When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim.  This Court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (internal quotations and citations omitted).

Plaintiff must demonstrate that his protected speech was a substantial or motivating factor in the adverse action taken by defendant.  Specifically, plaintiff must point to specific, nonconclusory evidence reasonably linking his speech to the adverse action.  *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003).  The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause-without which the action being challenged simply would not have been taken." *Vereecke*, 609 F.3d at 400 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007), and *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)).  "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *see Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim.").

Plaintiff states that he wrote to the Missaukee County Circuit Court on two occasions "complaining of counsel['s] lack of representation and sought relief." He states that his January 19, 2009, cell reassignment came within "one-half hour of being

served with notice of counsel's intent to withdraw." (Am. Compl. ¶ 102, PageID.347). Plaintiff's attorneys frequently moved to withdraw from representing him. He has not provided evidence on which a reasonable trier of fact could find a causal relationship between protected conduct and an adverse action.

I find that defendant Martin is entitled to judgment in her favor as a matter of law on plaintiff's retaliation claims.

## IV.    Equal Protection

Plaintiff alleges that Dr. Ureta violated his rights under the Equal Protection Clause of the Fourteenth Amendment by prescribing narcotic medications for MCJ inmates other than plaintiff. (Count III, Am. Compl. ¶ 99, PageID.347).   The Equal Protection Clause states that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1; *see Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007).   Plaintiff was required to present evidence demonstrating "'intentional and arbitrary discrimination' by the state; that is, he must demonstrate that he "[was] intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff falls far short of satisfying these requirements.  Dr. Ureta did not prescribe narcotics for any inmate at MCJ. Defendant Ureta is entitled to judgment in his favor as a matter of law on this claim.

Plaintiff alleges that defendant Martin violated his rights under the Equal Protection Clause by arranging for medical care for other jail inmates, but not for plaintiff.  (Am. Compl. ¶ 100, PageID.347).  The record shows that plaintiff received

medical care.   He has not provided evidence that any similarly-situated inmate at MCJ received materially different care.

Plaintiff's claim that Martin moved him from a general population cell to a maximum security cell without adequate procedural protections (Count III, Am. Compl. ¶ 101, PageID.347) is not a claim under the Equal Protection Clause.   As previously noted, it is a claim under the Due Process Clause.  Plaintiff did not have a protected liberty or property interest in his cell assignment.

## V.   Missaukee County

Plaintiff seeks to an award of damages against Missaukee County under section 1983 for an alleged violation of his Eighth Amendment rights.   Under *Monell*, a municipality can be liable under § 1983 when an official "policy or custom" caused a violation of the plaintiff's constitutional rights.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694-95  (1978).   "A municipality may not be held liable under § 1983 on a respondeat superior theory—in other words, 'solely because it employs a tortfeasor.' " *D'Ambrosio v. Marino*, 747 F.3d 378,  (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691).   Instead, a municipality is liable under § 1983 only where, "through its deliberate conduct," it was "the 'moving force' behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013).   A municipality cannot be liable under *Monell* absent an underlying constitutional violation.  *See Smith v. Erie County Sheriff's Dep't*, 603 F.3d 414, 423 (6th Cir. 2015); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *see also Bolden v. City of Euclid*, 595 F. App'x 464,  (6th Cir. 2014) ("It is well settled that there can be no *Monell* liability under § 1983 unless there is an

underlying unconstitutional act.") (citations and quotations omitted).  Here, because

plaintiff failed to present evidence on which a reasonable trier of fact could find an

constitutional violation, his *Monell* claim "likewise fails." *Martin v. Commissioner*, 581

F. App'x 509, 512 (6th Cir. 2014).

### **Recommended Disposition**

For the reasons set forth herein, I recommend that defendants' motions for

summary judgment (ECF No. 226, 232) be granted and that judgment be entered in

defendants' favor on all plaintiff's claims against defendants.

Dated:  March 3, 2016      /s/  Phillip J. Green
                           United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served
within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R.
CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH.
LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver
of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v.
Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v.
Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See
McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier
Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).