UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ALLEN BAKER,

       Plaintiff,

                                      Case No. 1:09-cv-1059

v.

                                      HON. ROBERT HOLMES BELL

COUNTY OF MISSAUKEE et al.,

       Defendants.

_____/

## MEMORANDUM OPINION AND ORDER

On November 19, 2009, Plaintiff Robert Allen Baker filed a complaint pursuant to 42 U.S.C. § 1983. An amended complaint was filed on March 18, 2010. (ECF No. 29.) Plaintiff raised claims against Missaukee County and eleven of its employees: Sheriff James Bosscher, Lieutenant Andrea Martin, Dispatch Sergeant David DeRuiter, Detective Erik Wien, and Corrections Officers Carole Yonkman, Eric Wickstrom, Darcy Hibblen, Stefanie Mills, Kenneth Bigger, Julie Anderson, and Jason Behl (the "Missaukee County Defendants"). Plaintiff also raised a claim against one non-Missaukee County Defendant, Sotero Ureta, M.D. The Missaukee County Defendants and Ureta have both filed motions for summary judgment. (ECF Nos. 226, 232.) Plaintiff did not respond to these motions for summary judgment. On March 3, 2016, United States Magistrate Judge Phillip J. Green issued a report and recommendation ("R&R"), recommending that the motions for summary

judgment be granted. (ECF No. 242.) The matter is before the Court on Plaintiff's objections to the R&R. (ECF No. 243.)

The Court is required to make a de novo determination of those portions of the R&R to which specific objection has been made, and may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment, "[c]redibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). "[T]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252. The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

The magistrate judge has provided a thorough summary of the facts and the Court need not restate them here. Plaintiff has raised 26 objections to the R&R.

**<u>Objections One and Three</u>**

Plaintiff's first and third objections relate to his failure to file a response to Defendants' motions for summary judgment. In February 2012, both Defendant Ureta and the Missaukee County Defendants filed motions for summary judgment. (ECF Nos. 158, 165.) Plaintiff filed responses to both of these motions. (ECF Nos. 178, 196.) On October 29, 2013, United States Magistrate Judge Joseph G. Scoville issued an order dismissing Defendants' motions for summary judgment and establishing deadlines for re-filing the motions and all related briefs. (ECF No. 224.) Plaintiff states that he did not think he had to

respond to Defendants' newly-filed motions for summary judgment, and that he did not believe "that the proceeding was 'starting over,' where the response requirement is crucial." (Objections 4, ECF No. 243.) Thus, Plaintiff asks that this Court either stay the proceedings, grant Plaintiff an extension of time to refile responses, or consider the Plaintiff's responses to Defendants' initial motions for summary judgment.

The Court will not do so. As Magistrate Judge Green noted, the Court's October 2013 order was clear. The Court required Defendants to submit new motions for summary judgment on or before November 26, 2013. The Court stated that "Plaintiff is authorized to file a brief in opposition to any such motion on or before December 18, 2013." (Order 2, ECF No. 224.) The Court further stated:

> The parties have a history of presenting their arguments in disorganized fashion. It will not be tolerated again. *No party may incorporate by reference any argument from a brief filed before the date of this order. The court expects the parties to file new briefs setting forth all relevant arguments* and supported only by evidence allowed by the Federal Rules of Civil Procedure. The parties should not anticipate *any* modification of the briefing schedule or the applicable page limits . . . .

(*Id.*) (emphasis added). The Court's order informed the parties that they were expected to "file new briefs," and were not permitted to incorporate arguments made in "brief[s] filed before the date of [the] order." The Court also made clear that no modifications of the briefing schedule would be made. The Court finds no reason to now excuse Plaintiff's failure to comply with the terms of the order.

4

**A. Dr. Ureta**

Plaintiff alleged that Dr. Ureta was deliberately indifferent to his serious medical needs by prescribing non-narcotic pain medication for Plaintiff's lower back problem. (Am. Compl. ¶ 91.) The R&R concluded that "Plaintiff has presented no medical evidence indicating that the treatment provided by Dr. Ureta was medically inappropriate, much less rose to the level of an Eighth or Fourteenth Amendment violation." (R&R 24.) The Court agrees, and Plaintiff's objections do not convince the Court otherwise.

Plaintiff's dispute with Dr. Ureta's medical treatment concerns the adequacy of the treatment. When that is the case, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). When a prisoner's allegations "simply constitute a difference of opinion between himself and medical personnel regarding his medical condition, he has failed to allege facts that, if proven, would rise to the level of deliberate indifference to a serious medical need." Further, as the magistrate judge noted, "the treatment of chronically suffering prisoners with narcotic medication does not fit neatly into our general Eighth Amendment test." *Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015). "[T]he Eighth Amendment does not impose a constitutional obligation upon prison officials to enable a prisoner's substance abuse or addiction problem." *Id.* at 518.

Plaintiff's objections to the R&R concerning Dr. Ureta are as follows:

5

**Objection Two**

Plaintiff's second objection contends that the R&R's statement that Plaintiff "alleges that Dr. Ureta violated his rights under the Equal Protection Clause by prescribing narcotics for other jail inmates, but not for Plaintiff," (R&R 3, ECF No. 242), "must be untrue, as the plaintiff has no personal knowledge that Dr. Ureta did this." (Objections 5.) This objection, however, has no impact on the magistrate judge's conclusion that Dr. Ureta was not deliberately indifferent to Plaintiff's medical needs.

**Objection Eight**

Plaintiff's eighth objection concerns the R&R's statement that "[t]here is no evidence from plaintiff's physician or from any other physician that plaintiff took methadone at a dose and for length of time that significant withdrawal symptoms would occur." Plaintiff notes that his verified complaint states "that he was violently ill and that he has witnesses to those facts." (Objections 7.) The fact that Plaintiff was violently ill and has witnesses still does not change the fact that there was no indication in the medical records that Dr. Ureta received that withdrawal symptoms would likely occur, and that Dr. Ureta should be monitoring for any signs of withdrawal. Again, Plaintiff produced no evidence in response to Defendants' motions for summary judgment, and the Court made clear that "[*n*]*o party may incorporate by reference any argument from a brief filed before the date of*" the October 2013 order. Thus, Plaintiff's objection does not impact the R&R's finding that Dr. Ureta was not deliberately indifferent to Plaintiff's medical needs.

**Objection Nine**

Plaintiff's ninth objection concerns the R&R's statement that "[t]here is no evidence that plaintiff or any member of his family made any attempt to obtain the [medical] records and provide them to jail officials." (R&R 14.) Plaintiff states that he signed a release for his medical records within 24 hours of arrival at MCJ. Regardless, Dr. Ureta has provided a sworn affidavit stating that he "did not receive Mr. Baker's records from Grayling Family Practice/Dr. Michael Burkley until January 3, 2008, when they were faxed to my office." (Ureta Aff. ¶ 9.) The fact that Grayling Family Practice or Burkley may have delayed sending medical records to Ureta does not demonstrate deliberate indifference on Ureta's behalf.

**Objections Eleven and Twelve**

Plaintiff's next objections state that "it is absolutely untrue that Dr. Ureta did not know the plaintiff was in jail until January 3, 2008," that Dr. Ureta knew Plaintiff had been taking methadone and was likely experiencing withdrawal symptoms, and that Dr. Ureta could not possibly have determined that a medical examination was not necessary without speaking to Plaintiff first.

The Court finds these objections unpersuasive. The R&R does not state that Dr. Ureta was not aware of Plaintiff's presence until January 3, 2008; it states that "Dr. Ureta first became aware of plaintiff's medical condition on January 3, 2008." (R&R 16.) This is consistent with Dr. Ureta's affidavit. Plaintiff's statement that Dr. Ureta knew Plaintiff had been taking methadone does not lead to the conclusion that Dr. Ureta knew Plaintiff was

likely experiencing withdrawal symptoms. As the magistrate judge previously stated, "[t]here is no evidence from plaintiff's physician or from any other physician that plaintiff took methadone at a dose and for length of time that significant withdrawal symptoms would occur." (R&R 13.) Moreover, the Court is reluctant to second guess Dr. Ureta's determination, upon reviewing Plaintiff's medical records, that a medical examination was not necessary. *Westlake*, 537 F.2d at 860 n.5. And even if it were, Dr. Ureta has stated that "[a]n examination of Mr. Baker for chronic back pain condition or symptoms would not have changed or altered the medical therapy received." (Ureta Aff. ¶ 18.)

**Objections Thirteen, Fourteen, and Fifteen**

Plaintiff's next objections contend that Dr. Ureta's reliance on prison officials to make medical determinations and judgments, rather than personally examining Plaintiff to determine the proper course of treatment, amounted to deliberate indifference to Plaintiff's medical needs. Plaintiff also contends that Dr. Ureta prescribed Flexeril without inquiring as to whether Plaintiff was allergic to the drug. Plaintiff contends that Dr. Ureta's statement in his affidavit that he "never refused to see, examine, or treat" Plaintiff is false.

The Court is not persuaded. Plaintiff was "under observation from the corrections officers who could advise [Dr. Ureta] of any changes in [Plaintiff's] conditions or symptoms." (Ureta Aff. ¶ 16.) Dr. Ureta's reliance on corrections officers to inform him of any changes in Plaintiff's conditions or symptoms does not amount to deliberate indifference. Further, evidence in the record indicates that prior to arriving at MCJ, Plaintiff was treated

with Flexeril, and did not complain of an allergy. (Medical Records, ECF No. 227-2, PageID.2425, 242.) Moreover, Plaintiff had completed a health screen where he indicated that he had no drug allergies. (ECF No. 232-3, PageID.2632.) Lastly, while Plaintiff argues that it "is an established and undisputed fact that for ten months the Dr. did not ever see or examine the plaintiff," this does not contradict Dr. Ureta's statement that he "never *refused* to see, examine, or treat" Plaintiff, (Ureta Aff. ¶ 20), and does not suggest that Dr. Ureta was deliberately indifferent to Plaintiff's medical needs.

### **Objection Sixteen**

Plaintiff's next objection concerns the R&R's determination that "the dispute is over the adequacy of the treatment" provided by Dr. Ureta. Plaintiff states that "Dr. Ureta refused or failed to ever once consult with or examine the plaintiff about his spine or pain." (Objections 9.) The Court disagrees. There is no dispute that Dr. Ureta provided *some* medical attention to Plaintiff. Indeed, Ureta prescribed Plaintiff with prescriptions for Ultram, Flexeril, and a second mattress. While Plaintiff may not have been satisfied with this medical treatment, as the magistrate judge noted, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Baker*, 605 F. App'x at 518 (quoting *Westlake*, 537 F.2d at 860 n.5). The Court is reluctant to do so here.

**Objection Seventeen**

The R&R found the Sixth Circuit's recent decision in *Baker v. Stevenson* "instructive." Plaintiff notes that there are factual distinctions between this case and *Baker*. Plaintiff states that in *Baker*, the plaintiff "received non-narcotic medications after the narcotics were stopped. He was not forced to go through unmonitored withdrawals. He was seen, examined, and the medical professionals made a deliberate effort to provide adequate and effective non-narcotic medications. None of this occurred in the instant case." (Objections 10.)

The Court finds no error in the R&R's reliance on *Baker*. *Baker* discusses the "Eighth Amendment as applied to incarcerated substance abusers." 605 F. App'x at 518-19. *Baker* stated that "'[w]here the question is one of administering a highly addictive drug on a continuing basis in the prison setting, the prison staff should have some discretion.'" *Id.* (quoting *French v. Daviess Cnty., Ky.*, 376 F. App'x 519, 522 (6th Cir. 2010). While "[c]ourts have found withdrawal symptoms to qualify as a serious medical need," *French*, 376 F. App'x at 522, as mentioned above, Plaintiff has failed to present medical evidence in response to Defendants' motions for summary judgment that he exhibited these symptoms and, importantly, has also failed to present evidence showing that Dr. Ureta was aware that Plaintiff was going through withdrawals, yet consciously disregarded that risk. Moreover, other courts to consider the matter have found that "[t]he disagreement concerning the use of narcotic pain medication is insufficient to state a claim under 42 U.S.C. § 1983." *See*

*Huard v. Essex Cnty. Corr. Ctr.*, No. Civ.A.08-120S, 2009 WL 1886050, at *3 (D.N.H. May 21, 2009); *see also Baez v. I.N.S.*, No. 06-30112, 2007 WL 2438311, at *2 (5th Cir. Aug. 22, 2007) ("The physicians' prescription of Ultram for Baez's pain was reasonable given the OPP policy that narcotics could not be prescribed, and the physicians increased the dosage when Baez complained that the medication was not effective."); *Steele v. Weber*, No. CIV 06-4001, 2006 WL 3544719, at *7 (D.S.D. Dec. 8, 2006).

Thus, the Court agrees with the R&R that "Plaintiff has presented no medical evidence indicating that the treatment provided by Dr. Ureta was medically inappropriate, much less rose to the level of an Eighth or Fourteenth Amendment violation."

### **Objection Twenty Four**

Plaintiff's last objection pertaining to Dr. Ureta alleges that the magistrate judge erred in concluding that Dr. Ureta did not violate Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. Plaintiff states that Dr. Ureta "intentionally did not see, examine, or consult with the plaintiff on any of his weekly visits to MCJ for ten months, while he did see, examine and consult with all other prisoners similarly situated." (Objections 13.) Plaintiff has failed, however, to identify any similarly situated prisoners who were intentionally treated differently and, thus, his claim fails.

**B. The Missaukee County Defendants**

<u>**Objection Four**</u>

The R&R recommended granting summary judgment to several of the Missaukee County Defendants on the ground that they are entitled to qualified immunity. The R&R noted that Plaintiff did not satisfy his burden of showing that Defendants violated clearly established law. Plaintiff's fourth objection argues that, because Defendants' Rule 12(b)(6) and 12(c) motions were denied, there is no dispute that the alleged constitutional or statutory rights that were violated "were clearly established at that time." (Objections 6.) Contrary to Plaintiff's assertion, however, a finding that a claim survives a motion to dismiss is distinguishable from a finding on a motion for summary judgment that Defendants are entitled to qualified immunity. Accordingly, this objection is meritless.

<u>**Objection Six**</u>

Plaintiff's sixth objection contends that Lieutenant Andrea Martin refused to fill Plaintiff's medical prescriptions and did not contact Plaintiff's treating physician about an alternative. Plaintiff does not identify how the magistrate judge erred. Thus, the objection is meritless. *Miller*, 50 F.3d at 380 (noting that the objections must identify the issues of contention).

<u>**Objection Eighteen**</u>

Plaintiff's eighteenth objection concerns the R&R's conclusion that Defendant Martin is entitled to qualified immunity. The R&R further recommended that "no reasonable trier

of fact could find in plaintiff's favor on the subjective component of these claims against defendant Martin." (R&R 27.) The magistrate judge correctly noted that Plaintiff's failure to file a response to the motions for summary judgment led to Plaintiff's failure to satisfy his burden of showing that Defendant Martin is not entitled to qualified immunity.

Moreover, while Plaintiff complains that Martin's actions caused a six week delay in his dental treatment, the Sixth Circuit has stated that "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Plaintiff has failed to do so.

### Objection Nineteen

Next, Plaintiff contends that Sergeant DeRuiter "was shown the broken and abscessed tooth, he discussed the need for urgent treatment with Martin several times, and refused to take action." (Objections 12.) As the R&R stated, when Plaintiff was examined by the EMTs, they determined that his medical condition did not warrant transportation to the hospital. Plaintiff eventually did see a dentist. While Plaintiff may allege that DeRuiter's actions delayed his ability to receive dental treatment, again, Plaintiff failed to place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. The Court agrees with the R&R that "Defendant DeRuiter and other members of

13

the jail's custody staff were entitled to rely on the judgment of medical professionals regarding the appropriate course of medical and dental treatment." (R&R 27.)

### Objection Twenty

Plaintiff's twentieth objection contends that Defendant Bosscher "did knowingly acquiesce in the unconstitutional conduct of the offending actors and such was the proximate cause of Plaintiff's harm." Plaintiff has provided no evidence that Bosscher knowingly acquiesced in unconstitutional conduct, and his complaint does not allege otherwise.

### Objection Twenty One

Plaintiff's next objection contends that he "believes that there is sufficient evidence to deny all defendants summary judgment and qualified immunity." "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed." *Miller*, 50 F.3d at 380. This general objection will not be considered.

### Objection Twenty Two

Plaintiff argues that the R&R improperly concludes that Plaintiff's jail cell assignments and security classification did not violate his constitutional rights. Plaintiff contends that the "evidence shows that there was no due process and the placements were for punishment." (Objections 12.) Again, Plaintiff produced no evidence in response to Defendants' motions for summary judgment, and the Court made clear that "[*n*]*o party may incorporate by reference any argument from a brief filed before the date of*" the October

14

2013 order. Moreover, the Court agrees with the R&R that, under *Sandin v. Conner*, 515 U.S. 472, 484 (1995), "Plaintiff did not have any protected liberty or property interest in his cell assignment or security classification." (R&R 30.)

### Objection Twenty Three

Plaintiff's next objection concerns his First Amendment retaliation claim. Plaintiff's complaint alleged that Plaintiff was moved from general population to isolation cells "without cause or penological purpose, on two separate occasions. On both occasions Plaintiff had just written the Court complaining of counsel's lack of representation and sought relief." (Am. Compl. ¶ 102.) The Court agrees with the R&R's conclusion that Plaintiff has failed to establish the necessary causal relationship between his complaints to the Court and his transfer to isolation cells to support a retaliation claim. While Plaintiff alleges that the events occurred close in time to one another, "often evidence in addition to temporal proximity is required to permit the inference" of a causal relationship. *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010). No such evidence exists here.

### Objection Twenty Five

Plaintiff objects to the R&R's conclusion that Defendant Martin did not violate Plaintiff's rights under the Equal Protection Clause. Again, Plaintiff fails to identify any Plaintiff who was similarly situated in all relevant aspects, yet was treated differently.

**Objection Twenty Six**

Lastly, Plaintiff objects to the R&R's conclusion that the County of Missaukee should not be liable for the imposition of a policy or custom that caused a violation of Plaintiff's constitutional rights. Because Plaintiff has not shown a violation of his constitutional rights, his claim fails. *See, e.g.*, *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the [governmental] defendant[] cannot be held liable under § 1983."); *Napier*, 238 F.3d at 743 ("Because the analysis concludes that [the plaintiff] cannot show that he suffered an underlying constitutional violation, his claims against Madison County must also fail."). Moreover, even if Plaintiff had shown a violation of his constitutional rights, Plaintiff has failed to show or allege an "affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). Thus, his claim fails.

## C. Miscellaneous Objections

Plaintiff's fifth objection states that it is common knowledge that methadone is a highly addictive medication and that Plaintiff never attempted to deceive anyone about his past misuse of methadone.

Plaintiff's seventh objection "objects that Judge Green makes a number of statements that are untrue and can only confuse the record." (Objections 7.)

Plaintiff's tenth objection states that "Judge Green fails to state that the defendants

refused to take the plaintiff to the dentist for six weeks while the tooth area abscessed and burst repeatedly, that the plaintiff was in severe pain the entire time, and that the defendants have not justified the delay."

Even assuming that these objections are valid, Plaintiff fails to state how the objections would change the magistrate judge's determination or entitle Plaintiff to any sort of relief. Plaintiff has failed to identify the claims that these objections pertain to and the individual Defendants who are liable.

## IV.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

V.

Accordingly,

**IT IS HEREBY ORDERED** that the Magistrate Judge's March 3, 2016 Report and Recommendation (ECF No. 242) is **APPROVED and ADOPTED** as the Opinion of this Court.

**IT IS FURTHER ORDERED** that Plaintiff's objections to the R&R are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants' motions for summary judgment (ECF Nos. 226, 232) are **GRANTED**.

**IT IS FURTHER ORDERED** that an appeal of this action would not be in good faith.

Judgment will enter consistent with this opinion and order.


Dated: March 31, 2016                              /s/ Robert Holmes Bell
                                                   ROBERT HOLMES BELL
                                                   UNITED STATES DISTRICT JUDGE